## In re KAPLAN BROS.

(Circuit Court of Appeals, Third Circuit. May 22, 1914. Writ of Certiorari Denied by Supreme Court June 22, 1914.)

No. 1826.

1. BANKRUPTCY (§ 241*)—EXAMINATION OF BANKRUPT—USE OF TESTIMONY.

Bankr. Act July 1, 1898, c. 541, § 7, cl. "a" (9), 30 Stat. 548 (U. S. Comp. St. 1901, p. 3425), providing that the bankrupt when present at the first meeting of his creditors, and at such other times as the court shall order, shall submit to an examination concerning the conduct of his business, etc., but that no testimony given by him shall be offered in evidence against him in any criminal proceeding, refers to past transactions concerning which the bankrupt may be charged with criminal conduct, and does not render his testimony inadmissible in a proceeding to punish him for contempt in giving evasive answers upon such examination.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

2. BANKRUPTCY (§ 241*)—EXAMINATION OF BANKRUPT—USE OF TESTIMONY.

General Order in Bankruptcy No. 22 (89 Fed. x, 32 C. C. A. xxv), requiring the deposition of witnesses to be taken in writing and, when completed, read over to the witness and signed by him in the presence of the referee, did not render the bankrupt's testimony inadmissible in a proceeding to punish him for contempt in giving evasive answers, though it was not signed by him, where his examination was not complete but was still in progress when suspended, because, in the referee's opinion, it would be useless to go on with it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

3. BANKRUPTCY (§ 241*)—EXAMINATION OF BANKRUPT—USE OF TESTIMONY.

Where, in a proceeding to punish the bankrupt for contempt in giving evasive answers, the accuracy of the notes of his testimony was proved by the stenographer who made them, no further proof was required.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

4. BANKRUPTCY (§ 241*)—CONTEMPT—PUNISHMENT—IMPRISONMENT FOR DEFINITE TERM.

Where, though the papers in a proceeding to punish bankrupts for contempt in giving evasive answers were entitled in the bankruptcy proceeding, the referee officially and of his own motion certified that the bankrupts were in contempt, the district judge acted upon his own initiative in entering a rule to show cause, the government, through the United States attorney, appeared and took charge of the proceedings, and the declared object of the referee, judge, and the government was to punish the bankrupts, and there was no prayer for civil relief, imprisonment for a fixed term was justified.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

In the matter of Kaplan Bros., bankrupt. To review an order adjudging Charles Kaplan and another guilty of contempt, and sentencing them to imprisonment, they bring error. Affirmed.

Alfred Aarons, of Philadelphia, for plaintiffs in error.

J. Howard Reber and Francis Fisher Kane, U. S. Atty., both of Philadelphia, for defendants in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before BUFFINGTON, HUNT, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. The plaintiffs in error, Charles Kaplan and Max Kaplan, were sentenced to imprisonment as a punishment for contempt of court. They were members of the bankrupt firm of Kaplan Bros. (no proceeding was taken against the third partner), and were called before the referee on May 13, 1913, for examination at the first meeting of creditors. Their answers and demeanor were so unsatisfactory that the referee (Joseph Mellors, Esq.) officially and of his own motion certified as follows:

"That in the course of the proceedings in this cause the said bankrupts were called for examination before me, and their answers to pertinent questions put to them showed that their whole testimony was practically a perfectly transparent case of intentional and willful evasion and refusal to make any explanation of the facts connected with their bankruptcy under the pretense of defective memory, ignorance, and stupidity, and a manifest and deliberate determination to conceal all material facts within their knowledge.

"The bankrupts are intelligent and have an average acquaintance with the English language and have been engaged in business many years.

"Their recollection, when they desired to exercise it, convinced the referee, as he watched them, that, when they desired to give facts, they could.

"The testimony taken before the referee shows to his mind a determination to refuse to give the trustee and the creditors any information whatever as to the disposition of their property. They pretended to be ignorant of facts which could have been known to any one who had sufficient intelligence to perform the most ordinary business affairs.

"Although the bankrupts failed, owing about $56,000 to creditors, with tangible assets not much more than nominal, yet their manner on the witness stand was anything but serious, but, on the contrary, they were sometimes flippant and at other times defiant.

"During the examination the bankrupts repeatedly and continually testified (as the reading of their testimony will show) in a vague, unsatisfactory, ambiguous, and contradictory manner, with the intention of obstructing the administration of justice and preventing the collection and distribution of their property and the discovery of the whereabouts of the same.

"When they were asked regarding transactions directly within their knowledge, and facts which they must have known, they expressed ignorance or lack of recollection.

"Charles Kaplan, during an examination covering only 48 pages of testimony, answered to pertinent and important questions, 'I don't know,' and 'I don't remember,' 118 times. His brother, Max Kaplan, in an examination covering only 29 pages, answered to pertinent questions, 'I don't remember,' and 'I don't know,' 117 times.

"Even with the aid of the referee, counsel were unable to elicit proper and truthful answers to all of the pertinent questions put to these witnesses, and were therefore obliged to suspend the examination.

"From the foregoing facts the referee finds that the said bankrupts have refused to submit themselves to 'an examination according to law.'

"The referee therefore finds that the said bankrupts, in refusing to submit themselves to 'an examination according to law,' are now in contempt before him."

It will be observed that the plaintiffs in error were not charged with perjury, so that the case of Magen v. Campbell, 26 Am. Bankr. Rep. 594, 186 Fed. 675, 108 C. C. A. 531, does not apply. A recent decision on the same subject is U. S. v. Appel (D. C.) 211 Fed. 495. After the referee's certificate had been filed, the trustee petitioned the district

court for a rule on the bankrupts to show cause why they should not be punished for contempt, and the rule was granted, returnable on October 29th. Thereupon they filed an answer, setting up inter alia that the trustee's petition was "insufficient to support any order whatsoever, in that it is beyond the power of a private citizen to petition for the infliction of criminal penalties, such as are sought to be inflicted by the said petition." Apparently this objection was regarded as well founded, and the proceedings upon that petition were abandoned.

But, as the referee's certificate had been brought to the attention of the District Court, Judge Thompson himself took action thereon, and on October 31st entered a new rule on the bankrupts requiring them to appear on November 3d "to show cause why they should not be held in contempt." No objection was made to the regularity of this order, and the bankrupts appeared and filed answers thereto. An oral hearing also was held, and the bankrupts were further examined at their own request; the final result being that the court adjudged them to be guilty of contempt and sentenced them to imprisonment for 60 days. This order is now complained of on several grounds, all of which call for consideration.

[1] 1. The first objection is, that the stenographer's notes of the bankrupts' testimony at the creditors' meeting were received in evidence; the argument being that this was in violation of section 7, cl. "a" (9), of the Bankruptcy Act. That clause requires a bankrupt to submit himself to examination concerning the conduct of his business, etc., but protects him by providing that "no testimony given by him shall be offered in evidence against him in any criminal proceeding." It is only necessary to reply that this provision has been declared by the Supreme Court to refer to past transactions concerning which the bankrupt may be charged with criminal conduct. Glickstein v. United States, 222 U. S. 139, 32 Sup. Ct. 71, 56 L. Ed. 128; Cameron v. U. S., 231 U. S. 710, 34 Sup. Ct. 244, 58 L. Ed. ——, decided January 5, 1914. But, if he should be charged with having committed perjury in the course of such examination, the necessities of the case require that his testimony may be proved in order to show in what particulars the asserted false swearing consists; and for a like reason, whenever he is charged with a punishable contempt in refusing to submit to the examination required by the act, the necessities of the case also require that his testimony be examined in order to ascertain whether in point of fact he has so refused.

[2, 3] 2. A second objection is because the notes of testimony were neither read over to the bankrupts nor signed by them. It is argued that the notes were therefore incompetent, because general order 22 (89 Fed. x, 32 C. C. A. xxv) provides inter alia as follows:

"The examination of witnesses before the referee may be conducted by the party in person or by his counsel or attorney, and the witnesses shall be subject to examination and cross-examination, which shall be had in conformity with the mode now adopted in courts of law. A deposition taken upon an examination before a referee shall be taken down in writing by him, or under his direction, in the form of a narrative, unless he determines that the examination shall be by question and answer. *When completed it shall be read over to the witness and signed by him in the presence of the referee.*"

In our opinion the italicized portion of this order does not now apply. The depositions of the bankrupts were not "completed," and were therefore not ready to be submitted or signed. The examination was still in progress, but was suspended because, in the opinion of the referee, it would have been useless to go on with it. Assuming for the present that he was right in this opinion, he was not obliged to continue the examination in order that additional questions might receive additional evasive answers. We agree with what was said upon this subject by the Court of Appeals of the Second Circuit in Re Schulman, 177 Fed. 193, 101 C. C. A. 363:

"Criticism is made because these proceedings were commenced before the bankrupt's examination was concluded and before he was 'cross-examined.' When it is remembered that this is a proceeding to punish the witness for contempt for refusing to be examined according to law, it will be seen that this complaint is not well founded. When the examination was concluded on January 7th, the offense had been finally and irrevocably committed, and the trustee was justified in presenting it to the court. He was not required to continue an examination which was absolutely abortive. It will hardly be pretended that a witness who, during his direct examination, makes an assault upon the presiding judge cannot be punished for contempt until his cross-examination is concluded. In other words, if the acts complained of amount to a contempt, they can be punished immediately; if they do not amount to a contempt they cannot be punished at all."

In the present case, if the bankrupts were guilty of contempt at all, the offense must have been complete at some point in the proceeding. If the referee was right, it had been fully committed when he intervened and certified the question to the District Court, and there was no necessity that the notes of testimony should be read over and signed. We may add that the accuracy of the notes was duly proved at the hearing before the District Court by the stenographer who made them, and nothing more was required.

[4] 3. It is further objected that this was not a criminal proceeding for contempt so as to justify the imposition of a fixed term of imprisonment. Little need be said upon this subject; the facts do not support the argument. The record shows that the referee certified the question "officially and of my own motion"; and that the district judge also acted upon his own initiative in entering the rule to show cause. Moreover, the government subsequently took charge of the proceedings, and the United States Attorney for this district appeared and defended in this court the action that had been taken below. The declared object of the referee, of the judge, and of the government, is to punish the contumacious conduct of the bankrupts as witnesses, in order to vindicate the authority of the law. The proceeding was not remedial in its nature but wholly punitive, and in our opinion, therefore, the contempt was properly punished by imposing a definite term of imprisonment. Gompers v. Stove Co., 221 U. S. 418, 32 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

We do not think Re Kahn, 30 Am. Bankr. Rep. 322, 204 Fed. 581, 123 C. C. A. 107, is in point. The present case did not include a prayer for civil relief, and there was no effort to obtain it. The sole object of the proceeding was punishment for contempt committed before a bankruptcy tribunal, and the action was begun and carried on against

the defendants by and before officials representing the public. The mere entitling of the papers in the bankruptcy proceeding cannot be decisive; courts look at the real nature of the thing done, and not merely at the name it may bear.

4. The remaining objection is that the facts do not justify the conclusions of the referee and of the district judge. We have therefore read the whole record with care, including the explanations offered by the bankrupts at the hearing before Judge Thompson, and we see no reason to disagree with the decisions below. What was said in Re Schulman, supra, is applicable to the examination now in question:

"In the case at bar we know nothing of the bankrupt, * *. * except as he is portrayed in the printed record. The referee, on the contrary, had an opportunity to see and hear the bankrupt and observe his manner while testifying, which is an inestimable advantage in cases of this character. The testimony of a witness may sound plausible when read afterwards from a printed book, and yet his conduct on the stand may have been such that no one who heard him testify believed that he was telling the truth. * * * Disingenuous and evasive as his testimony appears when read, it is obvious that the opportunity to 'watch' the bankrupt gave the referee a very marked advantage in determining whether he was acting honestly. His answers, 'I don't remember,' and 'What do you mean?' so often given might in some instances have been the result of a defective memory or an honest inability to understand. An appellate court may be unable to detect, under such conditions, the false from the true, the honest from the fraudulent, but any intelligent person, after observing the witness for hours on the stand, could not be deceived as to his purpose."

See, also, Epstein v. Steinfeld, 210 Fed. 236, 127 C. C. A. 54.

We should hesitate long before we disagreed with the conclusions of two competent and impartial judicial officers, each of whom enjoyed the opportunity of hearing and seeing the witnesses.

The lapse of time will require the order in question to be slightly modified. The term of imprisonment should of course begin at a future date instead of on November 3, 1913, and the District Court will be at liberty to make the necessary change. In other respects the order is affirmed.