## In re ROSENBLUM.

(District Court, W. D. Missouri, S. W. D. June, 1919.)

**Bankruptcy ☞241(2)—Evasive testimony and apparent concealment of assets held to warrant bankrupt's commitment for contempt.**

    A bankrupt's evasive testimony before the referee and the court, his failure to account for considerable quantities of goods or their proceeds, etc., *held* to warrant his commitment for contempt for a period of six months, with an opportunity for the bankrupt to make disclosure of his affairs after five days of imprisonment.

    In Bankruptcy. In the matter of Sol Rosenblum, bankrupt. On order to show cause why the bankrupt should not be punished for contempt. Judgment of commitment.

    John C. Ammerman, of Joplin, Mo., for referee in bankruptcy.
    William L. Butts, of Joplin, Mo., for receiver and trustee.
    Mercer Arnold, of Joplin, Mo., for petitioning creditors.
    Tadlock & Tadlock, of Joplin, Mo., for bankrupt.

    VAN VALKENBURGH, District Judge. The referee has filed with the court his certificate informing the court that the bankrupt has refused to submit to an examination according to law, in that he has persistently testified evasively and falsely, and has evinced a deliberate determination to conceal from his creditors and from the trustee all the material facts within his knowledge relating to the affairs of his bankruptcy. Upon the petition of the trustee, an order upon the bankrupt to show cause why he should not be punished for contempt was duly issued. The bankrupt was brought before the court, and the court directed that the bankrupt be further questioned upon the matters and things involved in his examination before the referee, for the double purpose of enabling the bankrupt to purge himself of his alleged contempt, if he so desired, and of enabling the court, from personal observation, to gain some insight into his mental and moral attitude. Accordingly the bankrupt was examined at considerable length. His answers were totally unsatisfactory and ineffective. The court has further carefully read the transcript of the testimony before the referee; it fully bears out the interpretation put upon it by that officer and by the trustee, and the examination before the court is confirmatory thereof.

    While it is true that the bankrupt is an ignorant man, and still speaks English imperfectly, nevertheless he is able to command the language for all sufficient purposes and with a full understanding of questions and answers. He was able to amass the sum of $2,000 as a pedler before entering into business in Joplin, and for some considerable period, at least, has been conducting a business amounting in volume to something like $30,000 or $40,000 a year. During the last four or five months preceding his bankruptcy, he bought goods in excess of $23,000. He had $3,500 on hand at the time of his failure. Taking into account his payments to creditors upon these bills, as well as his personal and other business expenses, as disclosed by his bank and check

books, he fails to account for something like $10,000 or $12,000 of the value of the merchandise he purchased. From his own admissions it appears that he has delivered, or, as he says, sold, considerable quantities of such goods to other dealers, including his brothers-in-law. He claims to have been paid for such sales. It is obvious that he should have either the goods, or the money, or satisfactorily account for the disposition of all or both.

Making all allowances for ignorance and imperfect and unsystematic business methods, the court cannot shut its eyes to the fact that the bankrupt belongs to a shrewd business class, which is not given to dissipating its property or giving it away to others, without compensation, and without heed to its destination. It is also noteworthy that those who can neither read nor write, and who do not, therefore, depend upon written records, more accurately develop the faculty of accurate memory. Some of our shrewdest and most successful business men, with reasonable limitations, have labored under this handicap. Aside from general ignorance, the bankrupt gives no evidence of stupidity, except that of a studied nature amounting to affectation. The court cannot permit a pretext so superficial to thwart the mandate of the law in the administration of bankrupt estates.

Apart from this, the court was able to detect certain evidences of deceit which have an important bearing upon its estimate of the entire conduct of the bankrupt. He stated to the court that his former attorney, Mr. Coon, then out of the city, had the original notes he gave his brother, whom he claimed to owe $5,000. He said his brother made him give notes for such loans, and that the full amount had been paid some time during the past year. Upon Mr. Coon's return, it developed that he had but one note, and that for the sum of $2,000. The bankrupt, at the hearing before the court, produced what purported to be copies made of the originals, said to be in Mr. Coon's possession. These copies were purely self-serving, and found no counterpart in what has been produced before the court. The court gave opportunity for such production, and no explanation is made for the failure. The fact appears to be that no such notes existed. The check books of the bankrupt do not show the payments he claims to have made. Even so, a wholly unexplained discrepancy further exists.

Furthermore, he admits making a statement to Dun & Co. which is, in fact, notoriously false. He claims, however, that this was made up by a representative of one of his creditors; that it was guessed at; that the bankrupt permitted it to be done, knowing what use was to be made of it, without taking the pains to make inquiry of his bookkeeper as to certain items, the exact amount of which could have been ascertained. His defense of ignorance in this respect is discredited. His action has been disingenuous and indirect. The conviction is forced that he has disposed of large quantities of his goods to relatives and others for his own benefit without payment, or that, if payment has been received, the same is concealed. He refuses to divulge the facts upon statutory examination, presumably for the purpose of protecting and concealing these illegitimate transactions.

In my opinion, the practice adopted in other circuits is appropriate

here. The judgment of the court will be that the bankrupt is guilty of contempt, and shall be committed to the Jasper county jail for a period of six months from this date. If, after five days of such imprisonment, he wishes to have an opportunity to be again examined, the marshal will be directed to take him before the referee for re-examination, and if, upon such examination, he shall make a full and satisfactory disclosure of all the material facts in the case within his knowledge, an application may be made to the court for a discharge from imprisonment; but if he declines to submit to such examination, or if, having applied for it, he is guilty of the same evasions and duplicity which characterized the ones already had, such imprisonment shall continue for the term already stated.

It is so ordered.