In re STEIN.

(District Court, N. D. California, S. D. June 20, 1925.)

No. 13967.

1. **Contempt ⬤⟿70, 79—Sentence is for punishment or coercion, and for coercion should be for imprisonment until performance.**

The exercise of the power to punish for contempt, given by Judicial Code, § 268 (Comp. St. § 1245), has a twofold aspect: First, the proper punishment of the guilty party for disrespect to the court; and, second, to compel performance of some act or duty required by the court which he refuses to perform, in which case the sentence should be coercive, by imprisonment until he performs or shows his inability to do so.

2. **Bankruptcy ⬤⟿241(2) — Willful refusal to answer questions required by referee is "criminal contempt."**

Willful refusal by bankrupt or other witness to answer questions required by a referee in an examination under Bankruptcy Act, § 21(a), being Comp. St. § 9605, constitutes a "criminal contempt."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Criminal Contempt.]

3. **Bankruptcy ⬤⟿241(2)—Bankrupt held guilty of contempt for refusal to answer questions.**

Bankrupt, indebted $43,000 for merchandise purchased within six months, who on his examination persisted in refusing to account for a deficiency of $38,000 in merchandise, stating that it was "impossible," that he did not know, *held* chargeable with contempt.

4. **Bankruptcy ⬤⟿228—Observation of witness by referee adds weight to finding.**

The opportunity of a referee to observe a witness while testifying before him adds weight to his finding that the witness was not telling the truth.

In Bankruptcy. In the matter of Nathan Stein, bankrupt. On referee's certificates Nathan Stein and Jake Aurabach were cited for contempt. Both respondents adjudged in contempt.

Order reversed — F.(2d) —.

Henry Ach, of San Francisco, Cal., for referee and creditors.

Hilton & Christensen, of San Francisco, Cal., for respondent Stein.

Otto G. Kuklinski, of San Francisco, Cal., for respondent Aurabach.

KERRIGAN, District Judge. Nathan Stein, the bankrupt herein, has been cited before this court on an order to show cause why he should not be punished for contempt, because he has refused to be examined according to law under section 21 (a) of the Bankruptcy Act (Comp. St. § 9605), regarding certain matters in connection with the

administration of the business of the bankrupt prior to the date of bankruptcy.

One Jake Aurabach, a witness called by the trustee of the estate of said bankrupt, to be examined under the provisions of the same section, has in like manner been cited before this court for contempt in refusing to be examined according to law.

The facts in each case have been sufficiently set out in the referee's certificates, and are not such as to require restatement. Attention, therefore, will be given only to the alleged contumacious behavior of respondents in failing to be examined as provided by the section of the Bankruptcy Act referred to.

It appears from the certificate on contempt of the bankrupt that, after full and complete examinations before the referee, among others the following questions were put to him by counsel for the trustee, and the following answers returned:

"At the present time and at the date of your bankruptcy, according to your schedules, you were owing for merchandise on credit some * * * $43,489.59; to that I add $17,000 in assets, excluding the fixtures you had, making an aggregate of $60,-489.59. You were in business alone for part of the month of June, and up to November 27, 1924, a little less than six months; and your return of merchandise on hand aggregates less than about $22,000; leaving a deficiency of $38,489 and some odd cents in that short period of six months or less. I want you to account for that deficiency at this time? Answer: It would be impossible for me to do it.

"Question: You cannot do it at all? Answer: For me it is absolutely impossible. * * *

"The Referee: * * * The trustee has pointed out to you that there is a shortage, therefore, of approximately $38,000. The trustee has now asked you to explain how that shortage has come about, and you have answered, as I understood you, that you cannot explain it. Is that your answer? Answer: That is my answer. The reason I say that is because I really don't know.

"The Referee: The referee is pretty well satisfied that your shortage was due to the merchandise that was received by Paul Schainman, Henry Cohn, and Jake Aurabach. * * * While Mr. Brill may have acted in a measure as manager for you, the referee is of the opinion that you do know more than you have disclosed in this court, * * * and the referee instructs you to disclose the truth respecting this. * * *

If you have anything further to say, you may state it. Answer: There is nothing I can disclose any more than I have told."

[1] Section 725 of the Revised Statutes gives the United States courts power to punish for contempt, both by fine and imprisonment. Judicial Code, § 268 (Comp. St. § 1245). The exercise of this power has a twofold aspect; namely: First, the proper punishment of the guilty party for his disrespect to the court; and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform. In the former case the court must judge for itself the nature and extent of the punishment, with reference to the gravity of the offense. In the latter, the party refusing to obey should be fined and imprisoned until he performs the act required of him or shows that it is not in his power to do it. In re Chiles, 89 U. S. (22 Wall.) 157, 168, 22 L. Ed. 819; Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 441, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Clay v. Waters, 178 F. 385, 389, 101 C. C. A. 645, 21 Ann. Cas. 897; Merchants' Stock & Grain Co. v. Board of Trade of the City of Chicago, 187 F. 398, 399, 109 C. C. A. 230; Bessette v. W. B. Conkey Co., 194 U. S. 324, 328, 24 S. Ct. 665, 48 L. Ed. 997; In re Kahn, 204 F. 581, 583, 123 C. C. A. 107; 13 C. J. 86.

If imprisonment be imposed in a proceeding of the latter kind, it must be coercive in its nature. When inflicted in one of the other category, it is fixed and certain as a punishment for a completed disobedience of orders, or for other past wrongdoing. In re Kahn, supra. In this class of cases the sentence is entirely within the discretion of the trial court. Judicial Code, § 268; Creekmore v. United States, 237 F. 743, 752, 105 C. C. A. 497, L. R. A. 1917C, 845.

[2] The question thus presented is: Are these proceedings to punish civil or criminal contempts? The recent case of Davidson v. Wilson (C. C. A.) 286 F. 108, 110, is almost directly in point. There, as here, the matter complained of was distinctly one of the things forbidden by section 41 of the Bankruptcy Act (Comp. St. § 9625). As was done in this case, the matter was officially brought before the district judge by the referee on certificate, as provided by that section. In neither case was there a prayer for civil relief. On the authority of In re Kaplan Bros., 213 F. 753, 757, 130 C. C. A. 267, it was there held that the entitling of the papers in the bankruptcy proceeding

could not be decisive. The holding was that the proceedings, being for contempt of the judge's order to testify as the Bankruptcy Act required, were criminal in their nature. We think that to be the fact in this case.

[3] It remains to be decided whether or not the bankrupt's disclaimer of knowledge and his continued assertion of inability to answer questions constituted a contempt of court. Ex parte Hudgings, 249 U. S. 378, 382, 39 S. Ct. 337, 339, 63 L. Ed. 656, 11 A. L. R. 333, has been relied on as establishing the proposition that in such cases the only offense committed is that of perjury. Such, however, was not the decision there rendered. "That the contumacious refusal of a witness to testify may so directly obstruct a court in the performance of its duty as to justify punishment for contempt," said Chief Justice White in his opinion, "is so well settled as to need only statement." The point decided was simply that "there must be added to the essential elements of perjury under the general law the *further* element of obstruction to the court in the performance of its duty." (Italics ours.)

The law is, in fact, well settled that a witness in bankruptcy proceedings may be guilty of a criminal contempt by giving willfully evasive testimony and exhibiting a manifest determination to conceal the truth. 7 Remington on Bankruptcy, § 3027, and cases cited; In re Kaplan Bros., 213 F. 753, 757, 130 C. C. A. 267; In re Schulman, 177 F. 191, 193, 101 C. C. A. 361; Davidson v. Wilson (C. C. A.) 286 F. 108, 110; Haimsohn v. United States (C. C. A.) 2 F. (2d) 441, 442. In most of the cases referred to persistence in such answers as "I don't know," and "I don't remember," made under circumstances rendering the truth of those statements highly improbable, was held to constitute a contempt of court.

In that of In re Rosenblum (D. C.) 268 F. 381, which is closely in point, a bankrupt had bought goods in excess of $23,000 during the last four or five months preceding his bankruptcy, and had only $3,500 on hand at the time of his failure. As in the present case, he was examined at considerable length, and gave answers which were totally unsatisfactory and ineffective. In further similarity to the case before us, his own admissions showed that he had delivered, claiming to have sold, considerable quantities of goods to other dealers. In adjudging him guilty of contempt, the court used language which we think applicable in its entirety to the case of Nathan Stein: "Making all allowances for ignorance and imperfect and unsystematic business methods, the court cannot shut its eyes to the fact that the bankrupt belongs to a shrewd business class, which is not given to dissipating its property or giving it away to others, without compensation, and without heed to its destination."

[4] The naked words which the referee has certified, in and of themselves, are sufficient proof of the falsity of the statements which this bankrupt has made in a transparent and obvious effort to defraud his creditors and to use the Bankruptcy Act as an instrument of fraud. Nor is the fact to be lost sight of that, as pointed out by the Circuit Court of Appeals in Re Schulman, supra, however disingenuous a bankrupt's testimony appears when read, it is obvious that the opportunity to "watch" him gave the referee a very marked advantage in determining whether he was acting honestly. "The testimony of a witness may sound plausible when read afterwards from a printed book and yet his conduct on the stand may have been such that no one who heard him testify believed that he was telling the truth."

For this reason alone we would hesitate to overrule the finding of contempt in this case, made by the referee after observing the witness for hours on the stand. But here on the face of the certificate itself there is no room for doubt. As in United States v. Appel (D. C.) 211 F. 495, 496, the witness was being asked regarding transactions directly within his knowledge and facts which he must have known. When, therefore, he answered repeatedly, "I don't remember," it is obvious that he was deliberately withholding information to which the trustee was entitled. In effect his attitude was one of defiance. The bankrupt is then convicted of contempt of court.

With regard to the case of Jake Aurabach it is sufficient to say that under the principles above set forth he clearly was guilty of such misconduct during his examination before the referee as to amount to a willful obstruction of the bankruptcy court in the performance of its duty. Ex parte Hudgings, supra. He also must be held guilty of contempt before the referee, and accordingly, under the express terms of section 41(b), punishable upon the same conditions as if the failure to give proper testimony had occurred in the presence of this tribunal.

. The court is entirely convinced that the two witnesses here concerned are willfully withholding information which it is their duty to furnish, and that in doing so they are actuated by dishonest motives. They apparently think that their attitude of bland ignorance will deceive the court and permit them to cover up an unlawful disposal of the property of the creditors of the bankrupt. While these persons might hesitate to openly obtain these goods by violence and intimidation, in which they would expose themselves to bodily danger and to the risk of immediate arrest and punishment, they must learn that the less direct and to their minds, safer way of dishonestly acquiring the property of others adopted by them is not entirely beyond the reach of the law.

The judgment of the court will be that the bankrupt, Nathan Stein, is guilty of contempt, and shall be committed to the county jail of the city and county of San Francisco for a period of 3 months from this date. If, after 30 days of such imprisonment, he wishes to have an opportunity to be again examined, the marshal will be directed to take him before the referee for re-examination, and, if, upon such examination, he shall make a full and satisfactory disclosure of all the material facts in the case within his knowledge, an application may be made to the court for a discharge from imprisonment; but, if he declines to submit to such examination, or if, having applied for it, he is guilty of the same evasions and duplicity which characterized the ones already had, such imprisonment shall continue for the term already stated. In re Rosenblum (D. C.) 268 F. 381, 383.

The judgment of the court will be further that Jake Aurabach is guilty of contempt, and shall be committed to the county jail of the city and county of San Francisco for a period of one month from this date. If, after 15 days of such imprisonment, he wishes to have an opportunity to be again examined, the marshal will be directed to take him before the referee for re-examination, and if, upon such examination, he shall make a full and satisfactory disclosure of all the material facts in the case within his knowledge, an application may be made to the court for a discharge from imprisonment; but, if he declines to submit to such examination, or if, having applied for it, he is guilty of the same evasions and duplicity which characterized the ones already had, such imprisonment shall continue for the term already stated.