Luis E. Dubón, demandante, querellante y apelado, *v.* José Casanova Cintrón, demandado y José F. Casanova Cofresí, querellados y apelantes.

Núm. 9211.—*Sometido:* Diciembre 26, 1945. *Resuelto:* Marzo 25, 1946.

*Juan A. Faría y Lionel Fernández Méndez,* abogados de los querella-
dos apelantes; *Dubón & Ochoteco y Otero Suro & Otero Suro,*
abogados del querellante apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del
tribunal.

Los querellados apelantes, declarados culpables de desa-
cato por la Corte de Distrito de San Juan, solicitan la re-

vocación de la sentencia. Los hechos esenciales del incidente son como sigue:

En abril 21 de 1944, el Licenciado Luis E. Dubón radicó una demanda contra José Casanova Cintrón, reclamando una indemnización de $10,000 por los daños y perjuicios que alegó haber sufrido como consecuencia del acometimiento y agresión de que fué víctima por parte del demandado. A petición del demandante la corte ordenó el embargo de treinta acciones comunes del capital social de la corporación "R. Vega e Hijos, Inc.", las cuales aparecían registradas en los libros de la corporación a nombre de dicho demandado, disponiéndose además, que el márshal debía requerir al demandado para que le entregara el certificado acreditativo de dichas acciones. Al ser requerido, el demandado informó al márshal que él había endosado las acciones, negándose en aquel momento a revelar el nombre del comprador. Al insistir el márshal para que le manifestase el nombre del comprador y la fecha de la venta, el demandado, que estaba arrestado, pidió permiso para consultar con su abogado. Después de hablar por teléfono con su abogado, el demandado dijo al márshal que su abogado le daría los informes el lunes siguiente, o sea tres días después de la fecha en que se celebrara la conferencia. El lunes siguiente, el abogado del demandado informó al márshal que el demandado le había dicho que las acciones habían sido vendidas por él a su padre, el querellado José F. Casanova.

En mayo 8 de 1944, el demandante radicó una moción en la cual solicitó se expidiera una orden requiriendo a los querellados para que comparecieran a mostrar causas por las cuales no debieran ser castigados por desacato. La orden fué expedida y los querellados comparecieron ante la corte el día 15 de mayo de 1944. En marzo 20 de 1945 la corte inferior dictó sentencia declarando a ambos demandados incursos en desacato y ordenando al márshal que les requiriese nuevamente para que le hicieran entrega del certificado de

acciones; y disponiendo, que si así no lo hicieren, procediese a encarcelar a ambos demandados en la Cárcel de Distrito de San Juan "hasta tanto se purguen del desacato cometido y entreguen al márshal el certificado de acciones objeto de la orden de embargo". Los demandados apelaron. Alegan en apoyo de su recurso que la corte sentenciadora erró:

1. Al resolver que tenía jurisdicción para decretar la nulidad de una compraventa, en un procedimiento colateral sumario de desacato.

2. Al ordenar al querellado José F. Casanova que entregase el certificado de acciones, sin que el demandante prestara fianza a su favor para responder de posibles daños y perjuicios.

3. Al imponer a los querellados apelantes una pena de cárcel indeterminada si no acataban la orden dictada.

4. Al apreciar la prueba.

5. Al no resolver que la querella no aducía hechos constitutivos de desacato por parte de los querellados apelantes.

6. Al actuar con pasión, prejuicio y parcialidad.

Procederemos a discutir y resolver las cuestiones levantadas por los apelantes, en el mismo orden en que las hemos expuesto.

¿Actuó la corte inferior dentro de los límites de su jurisdicción, cuando requirió a los querellados para que hicieran entrega del certificado de las acciones; cuando les citó para mostrar causa por las cuales no debieran ser castigados por desacato; cuando declaró que la venta de las acciones por José Casanova Cintrón a su padre era simulada y hecha con el único propósito de entorpecer y dilatar la ejecución de la orden de embargo de dichas acciones; y, por último, cuando declaró a los querellados incursos en desacato y ordenó su encarcelación?

Insisten los apelantes en que la corte inferior no adquirió jurisdicción sobre la persona del querellado José F. Casanova, porque éste no fué llevado ante la corte en la forma

y manera establecida por la ley; que dicho demandado sólo podía ser llevado ante la corte a través de una acción plenaria de nulidad de venta y no mediante citación por desacato en un caso en el cual él no es parte; y que el título de José F. Casanova, como comprador de las acciones, no está comprendido en substancia y efecto dentro de la materia del pleito principal por daños y perjuicios. De acuerdo con la contención de los apelantes, aun asumiendo que la cesión de las acciones fuera simulada, la corte que decretó el embargo carecería de facultad para hacer comparecer ante ella a las partes que intervinieron en la simulación; y el único remedio que tendría el demandante que solicitó el embargo sería el de instar una nueva demanda contra dichas partes solicitando sentencia por la que se declarase la nulidad o la inexistencia de la cesión simulada.

No existe la menor duda en cuanto a que si después de haberse decretado el embargo de bienes de un demandado, éste los ocultare para impedir o dilatar el embargo, dicho demandado y cualquier persona que a sabiendas le hubiere ayudado a consumar la ocultación podrán ser citados para comparecer ante la corte y castigados por desacato por su desobediencia u oposición a la orden de embargo. ¿Existe alguna razón para que la regla sea distinta, cuando el demandado en vez de recurrir a la ocultación física de los bienes que han de ser embargados, recurre a la simulación de una cesión o venta de dichos bienes a una tercera persona, para que ésta pueda reclamarlos como suyos y evitar así el embargo? A nuestro juicio no existe razón alguna que pueda justificar una distinción.

La corte inferior, al ser informada de que su orden para el embargo de las acciones no había podido ser cumplimentada porque el demandado se negaba a entregar el certificado, alegando que había vendido las acciones a otra persona; que el alegado traspaso de las acciones era simulado y efectuado sin que mediara causa o consideración, con el

único propósito de impedir la práctica del embargo; y que el supuesto comprador de las acciones se negaba también a entregar el certificado, estaba obligada, en defensa de su dignidad y prestigio, a investigar los cargos formulados contra los querellados, y facultada para castigar a éstos por desacato a sus órdenes, si la evidencia demostraba a su satisfacción que los cargos estaban bien fundados.

La jurisprudencia citada por el tribunal sentenciador[1] sostiene que el acto de remover, ocultar, destruir o traspasar bienes para impedir que sean embargados preventivamente o en ejecución de sentencia, constituye un desacato al tribunal que expidió la orden. La regla es aplicable no solamente a las partes litigantes sí que también a cualquiera otra persona que coopere o tome participación en el acto constitutivo del desacato.[2] En el caso de *Lamb* v. *Cramer*, 285 U. S. 217, 76 L. Ed. 715, el demandado en un pleito para anular ciertos traspasos fraudulentos, transfirió a Lamb, su abogado, parte de los bienes envueltos en el litigio, alegando que lo había hecho en pago de honorarios. La Corte Suprema Federal al confirmar la sentencia de desacato dictada contra el abogado Lamb, se expresó así:

"La corte inferior correctamente sostuvo que tomando como base los hechos expuestos en la petición, los procedimientos contra Lamb podrían ser, o una demanda en equidad, como se hizo por la demanda suplementaria radicada por el Síndico . . . o un proceso por desacato, como en el presente caso, o en ambas formas, para obligarlo a devolver a la custodia de la corte la propiedad ilegalmente transferida.

"El recibo y ocultación ilegal de la propiedad, la cual estaba entonces *in gremio legis* (citas) tendía a nulificar cualquier decreto que la corte pudiese dictar en definitiva en el caso. Eso, y su detenta-

---

[1] *Ex parte Kellog*, 64 Cal. 343; *In re Farr*, 21 Pac. 273; *Greite* v. *Hendricks*, 24 N.Y.S. 546; *Burtch* v. *Zeuch*, (Ia.) 202 N.W. 542; y *Miller* v. *Smerkins*, 77 N.Y. S. 651.

[2] *Lowenthal* v. *Hodge*, 105 N.Y.S. 120; *Bessette* v. *Conkey Co.*, 194 U.S. 324, 48 L. Ed. 997; *King* v. *Barnes*, 113 N.Y. 479; *In re Cornblum*, 232 N.Y.S. 22; *Russell* v. *United States*, 86 F.2d 389; *Raymor Ballroom Co.* v. *Buck*, 110 F.2d 207.

ción de la propiedad después de haberse dictado la orden, constituía un fraude en contra del derecho de los demandantes a continuar el pleito hasta su terminación, y una obstrucción de la justicia constitutiva de un desacato a la corte, contra el cual podía procederse civilmente. (Citas.)''

La corte inferior, después de examinar la evidencia presentada en el acto de la vista para mostrar causa, llegó a la conclusión de que entre el querellado José Casanova Cintrón y su padre, el otro querellado, nunca existió un contrato para la cesión de las acciones y sí una confabulación para evitar el embargo y hacer ilusoria la sentencia que pudiera recaer sobre el demandado. El juez sentenciador consideró como hechos demostrativos de la simulación, que el demandado, al ser requerido para que entregara el certificado, manifestó que había vendido las acciones, rehusando revelar el nombre del comprador; que no fué hasta tres días más tarde que el abogado del demandado dijo al márshal que el demandado le había dicho que había vendido las acciones a su señor padre el 17 de abril de 1944, o sea cuatro días antes de decretarse el embargo; que esas mismas acciones habían sido vendidas antes por el demandado a Ramón Vega por $11,000, lo que hace difícil creer que fuese cierto que el demandado las vendiera a su padre por $4,000; y, por último, que el cheque de $1,000 que se dice fué entregado por Casanova padre, en 17 de abril, como parte del precio de las acciones, no fué presentado para su cobro hasta abril 25, 1944, o sea cuatro días después de decretado el embargo. La corte tuvo también en cuenta la relación de padre e hijo existente entre ambos querellados; el precio inadecuado de la supuesta venta; y el hecho de que las acciones nunca fueron transferidas en los libros de la corporación a favor del supuesto comprador.

Las conclusiones de la corte inferior están justificadas por la evidencia. En realidad no vemos razón alguna para que el juzgador pudiera haber llegado a conclusiones distintas.

Habiendo resuelto que el traspaso de las acciones era simulado y que se efectuó después de expedida la orden de embargo, con el propósito de impedir el embargo, el tribunal sentenciador cumplió con su deber y actuó con plena jurisdicción cuando declaró que el acto realizado por los querellados constituye un desacato. Si sostuviésemos lo contrario, tendríamos que admitir que el derecho a embargar bienes para asegurar la efectividad de una sentencia o para ejecutarla es pura ilusión, pues fácil sería en todos los casos traspasar los bienes después de dictada la orden pero antes de que el márshal se incautase de ellos, obligando al demandante a perseguir los bienes a través de una serie de pleitos contra los partícipes en las simulaciones.

[3] El segundo señalamiento carece de fundamento. En la orden de embargo de las acciones registradas a nombre del demandado José Casanova Cintrón se dispuso que el demandante debía prestar fianza por la suma de $3,000 a favor de dicho demandado. Practicada la investigación de los hechos denunciados en la querella por desacato y resultando de la evidencia sometida por ambas partes que el alegado traspaso de las acciones era inexistente, por haber sido simulado con el propósito de impedir el embargo, el Tribunal no estaba obligado por ley alguna a requerir la prestación de una fianza adicional a favor del simulado comprador de las acciones, como condición previa para poder ordenar a dicho comprador que entregara el certificado. Siendo el contrato simulado e inexistente, el supuesto comprador no adquirió título, derecho o interés alguno sobre las acciones, las cuales continuaron siendo propiedad de José Casanova Cintrón, a cuyo nombre aparecen inscritas en el registro de la corporación.

El tercer señalamiento envuelve una cuestión importante, levantada por primera vez en esta jurisdicción: ¿Tenía facultad la corte inferior para ordenar, como ordenó,

que los querellados fuesen reducidos a prisión y allí mantenidos, mientras no hagan entrega del certificado de las acciones objeto del embargo?

La sección 1, inciso 2, de la Ley de 1°. de marzo de 1902 "Definiendo el Delito de Desacato y Disponiendo la Pena Correspondiente", enmendada por la Ley de 8 de marzo de 1906 (pág. 32), y por la núm. 102 de mayo 12 de 1937 (Art. 145, Código Penal), faculta a las cortes de distrito para castigar por desacato a toda persona culpable de "obstinada desobediencia, u oposición intentada o realizada contra cualquier decreto, mandamiento u orden legal, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo". La sección 2 de la misma ley autoriza a dichas cortes "para castigar el desacato a su autoridad con prisión por un período máximo de treinta (30) días, o con multa máxima de doscientos (200) dólares o ambas penas, a discreción del tribunal".

Sostienen los querellados apelantes que las citadas disposiciones legales no facultan a la corte inferior para imponer una pena de cárcel por un período de tiempo indeterminado. Sostiene en contrario el querellante, y así lo resolvió la corte inferior, que tratándose como se trata en este caso de un desacato de carácter civil, en el que "la acción de la corte va encaminada a proteger mediante un castigo un derecho particular comprendido en un litigio ante el mismo tribunal"(³), no es aplicable la citada "Ley Definiendo el Delito de Desacato" la cual se refiere única y exclusivamente a *delitos* de desacato y no a desacatos de carácter civil.(⁴)

La corte inferior basa su sentencia en la doctrina de la facultad inherente que tienen y deben tener los tribunales de justicia para hacer cumplir sus órdenes y sentencias. Copiamos de la opinión emitida por el juez sentenciador:

(³)*Pueblo* v. *P. R. Ry. etc.* y *Puerto Rico Ilustrado, Inc.,* 59 D.P.R. 221.
(⁴)*Germán* v. *Corte de Distrito,* 63 D.P.R. 612.

"El castigo en el desacato criminal es de naturaleza punitiva; en el civil es de carácter coercitivo. De ahí que en el primero se imponga una multa o encarcelamiento por un término fijo, mientras que en el segundo, por regla general, se ordena la encarcelación del querellado hasta que éste cumpla la orden de la corte y a veces, imponer una multa para beneficio de la parte querellante. De ahí que no es posible en un desacato civil imponer un castigo punitivo; además de ilegal sería ilógico."

Los casos de desacato son *sui generis*. Estrictamente hablando, no son ni civiles ni criminales; ocupan la zona crepuscular entre casos tradicionales civiles y criminales. *Germán v. Corte,* supra; *Sánchez v. Romany, Juez,* 53 D.P.R. 596, 598. Sin embargo, los casos de desacato son clasificados como civiles o como criminales para ciertos propósitos, tales como apelación y el tipo de sentencia que se pueda dictar. Es cierto que algunas de las normas invocadas para clasificar un desacato como civil o como criminal son imprecisas y de difícil aplicación. El resultado es que las cortes algunas veces consideran un caso en parte como civil y en parte como criminal. Pero existe una distinción fundamental entre los casos de desacato, civiles y criminales, reconocida por nosotros repetidamente. En el desacato criminal el procedimiento y la sentencia son punitivos, para vindicar la dignidad y la autoridad de la corte y sirven como freno a los delitos contra el público, independientemente de los derechos de personas privadas; mientras que en el desacato civil tanto el propósito del caso como el remedio obtenido en el mismo son de carácter reparador, para beneficio del querellante.([5]) Los conceptos opuestos son "reparador" versus "punitivo". Moskovitz, *Contempt of Injunctions, Civil and Criminal,* 43 Col. L. Rev. 780, 823.

([5])*Germán v. Corte,* supra; *Pueblo v. P. R. Ry. L. & P. Co.,* 59 D.P.R. 221, 224–5; *Sánchez v. Romany, Juez,* 53 D.P.R. 596; *Lawton v. Rodríguez,* 38 D.P.R. 38, 55, 56; *In re Montalvo,* 22 D.P.R. 653, 656–7; *In re González,* 22 D.P.R. 28; *Oronoz v. Montalvo,* 21 D.P.R. 347.

Consecuencia lógica de esta distinción viene a ser la de que en un caso de desacato civil el querellante agraviado puede transigirlo, *Gompers v. Bucks Stove & Ranger Co..,* págs. 451–2, *infra;* mientras que en un desacato criminal

Esta diferencia en propósito entre el desacato civil y el criminal hace necesaria una diferencia en el remedio concedido: en los casos criminales se impone un término fijo de prisión o multa, mientras que en el desacato civil se impone prisión compulsoria indefinida. Esto es así porque la prisión por un término fijo es puramente punitiva y no puede tener efecto reparador; cualquier caso en que se imponga tal prisión tiene por tanto que ser clasificado como desacato criminal. Por otro lado, un término fijo no se puede reconciliar con la naturaleza reparadora del desacato civil y no puede imponerse en el mismo; . más bien una prisión compulsoria indefinida hasta que el acusado cumpla con la orden desacatada es la *raison d'étre* de un procedimiento de desacato civil. *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 441–44; *Lamb* v. *Cramer*, 285 U. S. 217, 220–21; *Raymor Ballroom Co.* v. *Buck*, 110 F.2d 207, 211–12 (C.C.A. 1, 1940); *Kreplik* v. *Couch Patents Co.*, 190 F. 565 (C.C.A. 1, 1911); *Root* v. *MacDonald*, 157 N. E. 684 (Mass. 1927); *Ex Parte Paniagua*, 33 D.P.R. 902, 909; Moskovitz, supra, págs. 801–4.([6])

Es curioso que el poder de nuestras cortes para imponer un remedio coercitivo por tiempo indefinido en un caso de desacato civil nunca ha sido considerado en todos sus aspectos por este Tribunal. En el único caso en que ha sido discutida ampliamente esta cuestión, la dejamos sin resol-

la manifestación hecha a la corte por la demandante, persona privada, al efecto de que "el pleito ha terminado por adjudicación a su favor de las fincas embargadas y que ella como demandante ya no tiene interés en la confirmación de la sentencia—no puede afectar . . . nuestra decisión . . .". *Gajero* v. *Valedón*, 58 D.P.R. 140, 143.

Si bien el demandante en un desacato civil de ordinario es una parte privada, tal procedimiento puede instarse en un caso apropiado por una agencia pública. *McCrone* v. *United States*, 307 U.S. 61; *Moskovitz*, infra, págs. 812–13.

([6])No hemos tenido la oportunidad de determinar si en un procedimiento de desacato está autorizado el pago de una multa al querellante privado. Moskovitz, supra, dice que (págs. 804–5): "El poder de concederle a un querellante privado una multa, como indemnización, según se ha dicho, se basa únicamente en un estatuto. Si bien hay autoridad para esto, un grupo igual de autoridades defiende la posición de que el poder para conceder multas indemnizadoras es inherente, a

ver. *Germán* v. *Corte*, supra. Es cierto que en un número de ocasiones hemos creído necesario exponer la distinción axiomática existente entre desacato criminal (punitivo) y desacato civil (reparador). Pero el problema sólo ha surgido en casos donde se nos pedía que determináramos si el procedimiento en apelación en un caso específico debía ser civil o criminal. Véanse los casos citados en el escolio 5, supra.

En el ya citado caso de *Germán* v. *Corte,* en la nota núm. 3 que aparece al calce de la página 615, hicimos constar lo siguiente:

"Notamos, sin embargo, que la Ley núm. 102, Leyes de Puerto Rico, 1937, no deja lugar a especulación sobre la cuestión ante nos, en cuanto a los casos radicados bajo tal Ley, en vista de su expresa disposición de que tales casos envuelven *desacato criminal*. . . ." (Bastardillas nuestras.)

El artículo 7 del Código de Enjuiciamiento Civil (1933) provee que "toda corte tiene poder:"

"4. Para hacer cumplir sus sentencias, órdenes y providencias, y las órdenes que dicte un juez fuera de estrado en una acción o procedimiento pendiente ante la corte;"

El artículo 28 del mismo Código dispone que todo funcionario judicial tiene facultad: "2. Para obligar a la obediencia de sus órdenes legales, según se dispone en este Código". Y el artículo 29 provee que "Para el ejercicio efec-

menos que lo limite el estatuto. En algunas jurisdicciones encontramos estatutos que autorizan indemnizaciones a querellantes privados . . .". La cuestión permanece sin resolverse en esta jurisdicción.

En las jurisdicciones donde se ha ordenado el pago de multas en procedimientos de desacato, una sentencia por multa fija es llamada desacato civil si la corte ordena que se le pague la multa al querellante. *Fox* v. *Capital Co.,* 299 U.S. 105; *Lamb* v. *Cramer,* supra; *Raymor Ballroom Co.* v. *Buck,* supra, pág. 211; *Root* v. *MacDonald,* supra; *Kreplik* v. *Couch Patents Co.,* supra. Pero si la "multa se impone en parte como compensación al querellante y en parte como castigo, el aspecto criminal de la resolución predomina . . .". *Nye* v. *United States,* 313 U.S. 33, 42; *Germán* v. *Corte,* supra; *Pueblo* v. *P. R. Ry. Lt. & P. Co. et al.,* 59 D.P.R. 221. "Cuando se ordena que se pague al estado una multa, la sentencia es punitiva y el procedimiento se considera como uno de desacato criminal." Moskovitz, supra, pág. 790 y casos citados.

tivo de las facultades conferidas por el precedente artículo a un funcionario judicial, puede éste castigar por desacato en los casos dispuestos en este Código." El Código de Enjuiciamiento Civil no contiene disposición alguna que limite la facultad conferida a las cortes y funcionarios judiciales para castigar el desacato de carácter civil.

En el caso de *Germán* v. *Corte,* supra, esta Corte se abstuvo de considerar y resolver, por no estar envuelta en el recurso, la cuestión sobre "bajo qué circunstancia, si alguna, podría imponerse una sentencia que no sea por un término fijo". (Nota núm. 3, pág. 615.)

La opinión de la Corte Suprema Federal en *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418, 55 L. Ed. 797, arroja bastante luz sobre la cuestión que estamos considerando. Se presentó en dicho caso una moción para que se castigase a Gompers y a otros dos querellados por desacato, consistente en la violación de una orden de *injunction* dictada en un pleito civil, por la cual se prohibía a los querellados continuar el "boycott" de la compañía demandante. La orden de injunction era de carácter prohibitivo; y a los querellados se les imputó haberla violado al hacer lo que específicamente se les había prohibido que hicieran. La corte inferior les condenó a prisión por términos fijos. La Corte Suprema revocó la sentencia, expresándose así:

"No es el hecho del castigo, sino más bien su carácter y propósito que sirve con frecuencia para distinguir entre las dos clases de casos. Si se trata de un desacato civil, el castigo es un remedio, y se impone para beneficio del demandante. Pero en el caso de un desacato criminal, la sentencia es punitiva, para vindicar la autoridad de la corte. Es cierto que el castigo de encarcelación puede ser un remedio y, al mismo tiempo, tener el carácter de punitivo, y muchos procedimientos de desacato civil han resultado no solamente en la imposición de una multa, pagadera al demandante, sino también en la encarcelación del demandado. Empero, la encarcelación por desacato civil se ordena cuando el demandado se ha negado a realizar un acto afirmativo requerido por las disposiciones de una orden que, ya en su forma

o substancia era de carácter mandatorio. La encarcelación en tales casos no se impone como un castigo y sí como un remedio para obligar al demandado a hacer lo que se había negado a hacer. La sentencia en tales casos es que el demandado permanezca encarcelado a menos que realice el acto afirmativo requerido por la orden de la corte.

"Por ejemplo: Si el demandado se negase a pagar alimentos, o a entregar una propiedad que se le hubiere ordenado devolver a un Síndico, o ejecutar un traspaso requerido por una sentencia sobre cumplimiento específico, podría ser encarcelado hasta que cumpliese con la orden. A menos que existiesen elementos especiales de contumacia, el negarse a pagar o a cumplir la orden debe ser considerado más bien como una resistencia a la parte contraria, que como un desacato a la corte. La orden de encarcelación en esta clase de casos, por lo tanto, no es para vindicar la autoridad de la ley sino un remedio que se utiliza con el fin de obligar al demandado a hacer aquello requerido por la orden para beneficio del demandante. Si es encarcelado, como muy bien se dijo en *Re Nevitt*, 54 C.C.A. 622, 117 Fed. 451, 'él lleva las llaves de la prisión en su propio bolsillo'. Él puede poner fin a la sentencia y libertarse a sí mismo en cualquier momento, haciendo lo que anteriormente se había negado a hacer.

"Por otro lado, si el demandado hace lo que se le ordenó que no hiciera, la desobediencia es un hecho consumado. La encarcelación no puede deshacer o remediar lo que ya ha sido hecho, ni puede servir de compensación por el daño pecuniario causado por la desobediencia. Si la sentencia se limita a encarcelación por un período definido, al demandado no se le entrega una llave, y él no puede acortar el término prometiendo no repetir la ofensa. Tal encarcelación no tiene el efecto de un remedio de naturaleza coercitiva, sino simplemente el de un castigo por el acto de desobediencia ya consumado."

En *Commonwealth* v. *Lewis*, (Pa.) 98 Atl. 31, el querellado fué encarcelado hasta tanto procediese a la demolición de un edificio, según le había sido ordenado por la corte. La orden de encarcelación fué confirmada en los términos siguientes:

"De acuerdo con los precedentes estatutos y autoridades, la disposición de la ley de 1836, limitando la facultad de imponer sentencia de encarcelación a desacatos cometidos en la presencia de la corte, no tiene aplicación a casos de arrestos para hacer cumplir remedios civiles, cuando el propósito del arresto es hacer cumplir un decreto

de una corte. La facultad de hacer cumplir sus decretos es necesariamente un incidente de la jurisdicción de las cortes. Sin esa facultad un decreto sería en muchos casos inútil. 'Todas las cortes tienen esta facultad, y necesariamente deben tenerla; de lo contrario ellas no podrían protegerse contra el insulto ni hacer obedecer sus mandatos. Sin esa facultad las cortes serían absolutamente impotentes.' (Citas.) En *Commonwealth ex rel. Tyler* v. *Small*, 26 Pa. 31, se dijo en la página 42:

" 'La encarcelación de la parte que ha cometido el desacato es una de las medidas ordinarias en todos los procedimientos de esta clase, y se ordena usualmente como una cuestión de rutina, hasta que se somete; y como uno de los medios de hacer cumplir el decreto a favor del demandante.' "

Véanse: *City of Scranton* v. *People's Coal Co.*, (Pa.) 117 Atl. 673; *In Re Stein*, 7 F.2d 169; *Denny* v. *State*, (Ind.) 182 N. E. 313, 318.

Opinamos que en un caso de desacato civil, como lo es el de autos, en que el desacato consiste en la obstinada y contumaz resistencia de los querellados a obedecer la orden legalmente expedida por la corte inferior para la entrega al márshal del certificado acreditativo de las acciones pertenecientes al demandado, la corte de distrito procedió con plena facultad y dentro de los límites de su jurisdicción al dictar la sentencia recurrida. La encarcelación de los querellados no es un castigo impuéstoles por su desobediencia a la orden de la corte y sí un remedio coercitivo para obligarles a hacer lo que la corte les ordenó que hicieran. Los querellados ingresarán en la prisión llevando consigo la llave que puede devolverles la libertad. Bastará que ellos obedezcan la orden del tribunal, entregando el certificado, para que *ipso facto* recobren su libertad.

Los tres señalamientos restantes carecen de méritos. Ya hemos hecho constar anteriormente que la prueba creída por la corte inferior y las circunstancias especiales del caso justifican la sentencia recurrida. La querella formulada por el demandante adujo hechos suficientes para justificar la expedición de la orden para mostrar causa. No encontramos en

todo el récord del caso hecho o circunstancia alguna que justifique la imputación que se hace al juez sentenciador de haber actuado bajo la influencia de pasión, prejuicio o parcialidad.

*La sentencia recurrida debe ser confirmada.*