In the matter of the probate of the last will of Carmine Beneventano. Probate denied.

Ayres & Walker, for proponent.
A. J. Koehler, for contestant.

CHURCH, S. A paper purporting to be the last will and testament of the deceased is offered for probate. The circumstances attending the drafting of this paper are certainly unique. The deceased was an Italian, and the paper appears to have been drawn by a notary public who is an Italian by birth, but speaks English so imperfectly that it was necessary for him to give his testimony through the medium of an interpreter. The paper is written entirely in Italian, and an inspection of the document, and also of the translation of the document, show that there is no evidence that it was signed by the deceased, either by written signature, or by the ordinary method of an illiterate person making a mark where he wishes

to execute a document. In addition, the paper directly recites, as follows: "It was read to the testator, and it is only signed by the witnesses and by me, the notary." In the preceding paragraph there is also the following statement: "The present will is not subscribed by the testator, because he has stated that he is illiterate." As the statute in regard to wills in this state requires that a paper must be subscribed by the deceased, it is apparent that the above paper, as so executed, is insufficient to be admitted to probate. It is true, of course, that if a person is illiterate the subscription may be by a mark or symbol, but it cannot be dispensed with. To endeavor to avoid the plain conclusion which therefore applies in this matter, the attention of the court is called to a small mark, hardly distinguishable as a check mark, which follows the word "illiterate," and the statement is made that this mark was made by the deceased, and that therefore there has been such a subscription to the paper as will comply with the statute in effect in this state. The facts for consideration in this case are so unusual that an extended examination of the various decisions in this state, and of the general principle of law applicable to wills, as laid down in the other states in this country and in England, fails to furnish any case in which the facts at all approximate those in the case under consideration. Under the statute it is, of course, not necessary that a person who is illiterate, and therefore unable to write, should adopt any specific mark, provided that the party does make a mark or symbol which is intended to be in lieu of a signature, and distinctly states that the mark is made for such purpose. Notwithstanding the fact that this mark is not made in the manner in which illiterate persons execute documents (viz., a cross in between their signature, with the statement that it is their mark), still I would be inclined to hold that it was a sufficient subscription to the will if it appeared from the testimony that it was a symbol or mark which the deceased party adopted for that purpose; but the testimony of the subscribing witnesses does not warrant this assumption. The notary states that it was a mark made by the party to signify that he was illiterate, and that this clause in the will was correct,— somewhat in the nature of a check mark which an intelligent person sometimes appends to a document as an evidence that it is correct. The other witnesses are not clear as to whether they saw the deceased at any time touch the pen. None of the witnesses stated that the deceased stated that it was his mark, made by him in place of his signature. On the contrary, the notary, when asked if the deceased made the mark in place of his signature, replied that it was unnecessary; and the above statement which I have taken from the will, and from the part of it drawn by the notary, shows that it was regarded by the notary as unnecessary to have an illiterate person in any way sign or make a mark significant of his signature, because under the laws of Italy it was unnecessary for an illiterate person to subscribe a document, if he stated that he could not do so, in the body of the paper. In addition, the mark is not of the character which an illiterate person touching a pen would

make, but is in the nature of a slight erasure, and corresponds, in the character of the line, with the handwriting of the notary. There is therefore grave doubt whether this deceased ever touched the pen which made this mark; but, even if we assume that he did, it is apparent from the above state of affairs that it was not made as and for the mark in place of a signature, which, by reason of his being illiterate, he was unable to make.

As the will, therefore, is not executed in conformity with the provisions of the statute, it is unnecessary for me to consider whether it expresses the intentions and wishes of the deceased, or not, as it has been repeatedly stated by the court of appeals that the intention of the deceased will not permit him to override, or execute a document in defiance of, the provisions of the statute made for such purpose; and this has been applied in the case of holographic wills, where there was no question as to the intent of the deceased.

The facts disclosed in this case show that great caution should be exercised in the selection of persons who are permitted to act as notaries public in this country. In the various continental countries the office of notary public is a very important one; the notary being possessed of knowledge and skill to permit him to act as conveyancer, and also ability to draft wills and make different contracts. Persons coming to this country naturally conclude that a notary in this country has the ability and authority which a notary public possesses on the continent, and frequently, therefore, consult them on matters which should only be attended to by an attorney. We have here acting as notary a person who, although a citizen of this country, is incapable of understanding the English language, and who drafts documents intended to dispose of property situated in this state in a foreign language; he pays so little attention to the laws of the country of his adoption that, in executing this paper, he follows the law of the country of his birth. It seems to me that our authorities should at least see that a commission as a notary public should issue to no person until he is capable of speaking the English language.

Let a decree be entered herein rejecting probate of the paper proposed for probate. Probate denied.