Luis E. Dubón, Complainant and Appellee, *v.* José Casanova Cintrón et. al., Respondents and Appellees.

No. 9211.   Argued December 26, 1945.—Decided March 25, 1946.

Juan A. Faría and Lionel Fernández Méndez for respondents-appellants. Dubón & Ochoteco and Otero Suro & Otero Suro for complainant-appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

The respondents and appellants were adjudged guilty of contempt by the District Court of San Juan and now seek a reversal of that judgment. The essential facts involved in the contempt proceeding are as follows:

On April 21, 1944, Attorney Luis E. Dubón brought an action against José Casanova Cintrón to recover $10,000 as damages for an assault and battery alleged to have been committed by the defendant against the plaintiff. On motion of the latter, the court ordered the attachment of thirty shares of the common stock of R. Vega e Hijos, Inc., a corporation, which appeared registered on the books of the corporation in the name of said defendant, and in addition it directed the marshal to demand surrender of the stock certificate from the defendant. Upon such demand being made, the defendant advised the marshal that he had sold the shares, but refused to reveal the name of the purchaser. When the marshal insisted that the name of the purchaser and the date of the sale be supplied to him, the defendant, who had been arrested, asked permission to telephone his lawyer. After communicating with the latter, the defendant told the marshal that his attorney would give him the information next Monday, or three days after the conversation took place. On the following Monday, said attorney informed the marshal that the defendant had told him that he had sold the stock to his father, respondent José F. Casanova.

On May 8, 1944, the plaintiff filed a motion for an order requiring the respondents to show cause why they should not be adjudged in contempt. The order was issued and the respondents appeared before the court on May 15, 1944. On March 20, 1945, the lower court entered a judgment finding both respondents guilty of contempt and ordering the marshal once more to demand delivery of the stock certificate and in default of such delivery to commit the respondents to the District Jail of San Juan ''until such time as they should purge themselves of the contempt and surrender to the marshal the stock certificate involved in the order of attachment.'' The defendants thereupon appealed. In support of their appeal they urge that the lower court erred:

1. In holding that it had jurisdiction to decree the nullity of a sale within a collateral and summary proceeding for contempt.

2. In ordering the respondent José F. Casanova to surrender the stock certificate without requiring the plaintiff to post a bond for possible damages to said respondent.

3. In imposing on the respondents and appellants the penalty of commitment to jail for an indefinite term if they failed to obey the order entered.

4. In weighing the evidence.

5. In not holding that the complaint in the contempt proceeding was insufficient.

6. In acting under the influence of passion, prejudice, and partiality.

We will discuss and decide the questions raised by the appellants in the same order in which we have stated them.

■■ Did the lower court act within the limits of its jurisdiction in requiring the respondents to surrender the stock certificate; in ordering them to show cause why they should not be adjudged in contempt; in declaring that the sale of the shares of stock by José Casanova Cintrón to his father was simulated and made for the sole purpose of hin-

dering or delaying the execution of the order of attachment of the shares; or, lastly, in adjudging the respondents guilty of contempt and ordering their commitment to jail?

The appellants insist that the lower court did not acquire jurisdiction over the person of the respondent José F. Casanova, because the latter was not brought into court in the manner and form provided by law; that said respondent could only be brought into court through summons in an ordinary action to annul the sale and not through a citation for contempt in a cause to which he was not a party; and that the title held by José F. Casanova, as purchaser of the shares of stock, was not comprised, in substance or effect, with the subject matter of the main action for damages. According to the contention of the appellants, even if it were conceded that the transfer of the shares was simulated, the court which decreed the attachment would lack power to compel the appearance before it of the persons who participated in the simulation, and the only remedy available to the plaintiff who sued out the attachment would be to bring a separate action against said persons to declare the nullity or legal inexistence of the simulated tranfer.

There is absolutely no doubt that, where after the attachment of property of a defendant has been ordered, said defendant conceals the property in order to obstruct or delay the attachment, he or any other person who has knowingly aided in consummating the concealment, may be cited to appear before the court and punished for contempt for his disobedience or obstruction to the order of attachment. Is there any reason why a different rule should be applied where the defendant, instead of actually concealing the property to be attached, resorts to a simulated transfer or sale of said property to a third person so that the latter may claim it as his own, and thus avoid the attachment? In our judgment there is no reason which would justify such a distinction.

The lower court, upon learning that its order of attachment of the shares could not be executed because the defend-

ant refused to surrender the certificate on the claim that he had sold the shares to another person; that the alleged transfer of the shares was simulated and had been made without consideration for the sole purpose of preventing the levying of the attachment; and that the putative purchaser of the shares refused to surrender the certificate, was bound, in defense of its own dignity and prestige, to investigate the charges made against the respondents, and was empowered to punish the latter for disobeying its orders, if the evidence showed to its satisfaction that the charges were well founded.

The decisions cited by the trial court [1] hold that the act of removing, concealing, destroying, or transferring property in order to prevent it from being attached provisionally or in the execution of a judgment, constitutes a contempt of the court which issued the order of attachment. The rule is applicable not only to the litigants proper but also to any other person who cooperates or participates in the act constituting a contempt.[2] In *Lamb v. Cramer*, 285 U. S. 217, 76 L. ed. 715, the defendant, in a suit to set aside certain fraudulent conveyances, had transferred to Lamb, her attorney, a part of the property involved in the suit, claiming that she had done it in payment of attorney's fees. The Federal Supreme Court in affirming a judgment of contempt rendered against Attorney Lamb, said:

"The court below rightly held that upon the facts presented by the petition, proceedings might be had against Lamb, either by bill in equity, as was done by the supplemental bill filed by the receiver . . . or by contempt proceedings, as in the present case, or by both, to compel restoration of the diverted property to the custody of the court.

\* \* \* \* \* \* \*

---

[1] *Ex parte Kellog*, 64 Cal. 343; *In re Farr*, 21 Pac. 273; *Greite v. Hendricks*, 24 N.Y. Supp. 546; *Burtch v. Zeuch*, 202 N.W. 542 (La.); *Miller v. Smerkins*, 77 N.Y.S. 651.

[2] *Lowenthal v. Hodge*, 105 N.Y.S. 120; *Bessette v. Conkey Co.*, 194 U.S. 624, 48 Law. ed. 997; *King v. Barnes*, 113 N.Y. 479; *In re Cornblum*, 232 N.Y.S. 22; *Russell v. United States*, 86 F.(2d) 389; *Raymor Ballroom Co. v. Buck*, 110 F.(2d) 207.

His receipt and diversion of the property, which was then in *gremio legis*, (citing authorities) tended to defeat any decree which the court might ultimately make in the cause. That and his retention of the property after the decree was entered, were in fraud of the right of the plaintiffs to prosecute the suit to its .conclusion, and an obstruction of justice constituting a contempt of court which might be proceeded against civilly. (Citing authorities)''

After examining the evidence introduced at the hearing of the rule to show cause, the lower court reached the conclusion that as between the respondent José Casanova Cintrón and his father, the other respondent herein, no contract for the transfer of the shares ever existed but a conspiracy to avoid the attachment and render illusory any judgment that might be rendered against the defendant. Trial judge considered that the simulation had been established by the following facts: that the defendant, upon being requested to surrender the certificate, stated that he had sold the shares, and refused to reveal the name of the purchaser; that it was not until three days afterwards that the attorney for the defendant stated to the marshal that the defendant had told him that he sold the shares to his father on April 17, 1944, or four days before the issuance of the attachment; that those same shares had been previously sold by the defendant to Ramón Vega for $11,000, which makes difficult to believe that the defendant sold them to his father for $4,000; and, lastly, that the check for $1,000, said to have been delivered by Casanova, Sr. on April 17, as a part of the purchase price, was not presented for payment until April 25, 1944, that is, four days after the attachment had been issued. The court also took into account the relation of parent and child existing between both respondents; the inadequate price involved in the supposed sale; and the fact that the shares were never transferred on the books of the corporation in favor of the pretended purchaser.

The findings of the lower court are justified by the evidence. Really we can not see how the judge could have made any other findings.

Having decided that the transfer of the shares was simulated, and that it was made after the issuance of the order of attachment, for the purpose of preventing the attachment, the trial court fulfilled its duty and acted fully within its jurisdiction in declaring that the act committed by the respondent constituted a contempt of court. Were we to hold otherwise, we would have to admit that the right to attach property as security for a judgment or in execution thereof would be purely illusory, for it would be an easy matter in all cases to transfer the property after the issuance of the attachment but before the actual seizure thereof by the marshal, and thus compel the plaintiff to follow the property through a series of suits against the parties to such simulation.

The second assignment of error is groundless. In the order for the attachment of the shares registered in the name of the defendant José Casanova Cintrón it was provided that the plaintiff should post a bond in the sum of $3,000 in favor of said defendant. After the facts denounced in the complaint for contempt were investigated, and the evidence introduced by both parties having shown that the alleged transfer of the shares had no legal existence, inasmuch as it had been simulated for the purpose of preventing the attachment, the court was not bound by any law to require the furnishing of an additional bond in favor of the putative purchaser of the shares as a condition precedent to the surrender of the certificate by said purchaser. Since the contract was simulated and nonexistent, the alleged purchaser did not acquire any title, right, or interest in the shares, which continued to be the property of José Casanova Cintrón, in whose name they were registered on the books of the corporation.

The third assignment of error involves an important question, now raised for the first time in this jurisdiction, to wit: Was the lower court authorized to order, as it did, that the respondents be imprisoned until they should surrender the certificate of stock involved in the attachment?

Subdivision 2, § 1 of the Act of March 1, 1902, "Defining the offense of contempt of court and providing for the punishment thereof," as amended by the Act of March 8, 1906, and by Act No. 102 of May 12, 1937 (§ 145, Penal Code), empowers the district courts to punish for contempt any person guilty of "wilful disobedience of, or resistance offered to or exerted against, any lawful writ, mandate or order issued or made by any such court in a suit or action pending therein." Section 2 of the same Act authorizes said courts to "punish a contempt against their authority by imprisonment not exceeding the period of thirty (30) days. . ., or by a fine not exceeding two hundred (200) dollars or by both such fine and imprisonment, in the discretion of such court."

The appellants urge that the above-quoted legal provisions do not empower the lower court to impose the penalty of imprisonment for an indefinite term. The complainant on the contrary maintains, and the lower court so held, that where, as happens in the instant case, there is involved a civil contempt in which "the action of the court tends to protect, by the use of sanctions, a private right involved in a litigation before such court,"[3] the "Act defining the offense of contempt," which refers exclusively to criminal contempts, is inapplicable.[4]

The lower court based its decision on the doctrine of the inherent power of judicial tribunals to enforce their orders and judgments. We copy from the opinion rendered by the trial judge:

"The penalty imposed in a criminal contempt case is punitive in its nature; in a civil contempt it is coercive. Hence in the former a fine for a fixed term of imprisonment is imposed, whereas in the latter, as a general rule, provision is made for the commitment of the respondent until he should obey the order of the court, and sometimes a fine is imposed for the benefit of the complainant. It follows that in a civil contempt case punitive punishment can not be imposed; it would be both illegal and illogical."

[3] *People v. P. R. Ry. L. & P. Co.*, 59 P.R.R. 221.
[4] *Germán v. District Court*, 63 P.R.R. 587.

Contempt cases are *sui generis*. Strictly speaking, they are neither civil nor criminal; they occupy the twilight zone between traditional civil and criminal cases. *Germán* v. *District Court, supra; Sánchez* v. *Romany, Judge,* 53 P.R.R. 568, 570. Nevertheless, contempt cases are classified as either civil or criminal for certain purposes, such as appeal and the type of judgment which may be rendered. It is true that some of the standards invoked in categorizing a contempt as civil or criminal are imprecise and difficult to apply. The result is that the courts sometimes call a case partly civil and partly criminal. But there is one fundamental distinction between civil and criminal contempt which we have repeatedly recognized. In criminal contempt the proceeding and the judgment are punitive, to vindicate the dignity and authority of the court and to serve as a deterrent to offenses against the public, irrespective of the rights of private parties; whereas in civil contempt both the purpose of the case and the relief obtained therein are remedial, for the benefit of the complainant.[5] The polar concepts are "remedial" versus "punitive." Moskovitz, Contempt of Injunctions, Civil and Criminal, 43 Col. L.-Rev. 780, 823.

This difference in purpose between civil and criminal contempt in turn requires a difference in the relief granted: a fixed jail term or fine is imposed in criminal cases as against indefinite coercive imprisonment for civil contempt. This is

---

[5] *Germán* v. *District Court, supra; People* v. *P. R. Ry. L. & P. Co.,* 59 P.R.R. 221, 223–24; *Sánchez* v. *Romany, Judge,* 53 P.R.R. 568; *Lawton* v. *Rodríguez,* 38 P.R.R. 34, 49–51; *In re Montalvo,* 22 P.R.R. 608, 611–12; *In re González,* 22 P.R.R. 26; *Oronoz* v. *Montalvo,* 21 P.R.R. 331.

A logical consequence of this distinction is that in a case of civil contempt the aggrieved complainant can settle the case, *Gompers* v. *Bucks Stove & Ranger Co., supra,* pp. 451–2; whereas in criminal contempt a statement by the private complainant "that the suit has ended and the properties . . . . adjudicated to her and that as plaintiff she no longer has any interest in the : . . . [case] . . . . cannot affect . . . . our decision . . . ." *Gajero* v. *Valedón,* 58 P.R.R. 141, 144.

Although the complainant in a civil contempt case is generally a private party, such a proceeding may be brought in an appropriate case by a public agency. *McCrone* v. *United States,* 307 U.S. 61; Moskovitz, *infra,* pp. 812–13.

because imprisonment for a fixed term is purely punitive and can have no remedial effect; any case in which such imprisonment is imposed must therefore be characterized as criminal contempt. On the other hand, a fixed term is irreconcilable with the remedial nature of civil contempt and cannot be imposed therein; rather, indefinite coercive incarceration until the defendant complies with the order contemned is the *raison d'être* of a civil contempt proceeding. This is exemplified by the statement that in civil contempt the defendant carries the keys of his prison in his own pocket. *Gompers v. Bucks Stove & Range Co.*, 221 U. S. 418, 441–44; *Lamb v. Cramer*, 285 U. S. 217, 220–21; *Raymor Ballroom Co. v. Buck*, 110 F. (2d) 207, 211–12 (C.C.A. 1, 1940); *Kreplik v. Couch Patents Co.*, 190 F. 565 (C.C.A. 1, 1911); *Root v. MacDonald*, 157 N.E. 684 (Mass. 1927); *Ex parte Paniagua*, 33 P.R.R. 863, 869: Moskovitz, *supra*, pp. 801–4.[6]

Curiously enough, the power of our courts to impose indefinite coercive relief in a civil contempt case has never been squarely passed on by this Court. In the only case in which it has been explicitly discussed, we left that question open. *Germán v. District Court, supra*. It is true that we have found it necessary on a number of occasions to set forth the

---

[6] We have not had occasion to determine whether in a contempt proceeding payment of a fine to a private complainant is authorized. Moskovitz, *supra*, says that (pp. 804–5): "The power to grant a fine, by way of indemnity, to a private plaintiff has been said to rest solely on statute. Although there is authority for this, an equal body of authority supports the position that the power to grant indemnifying fines is inherent unless restricted by statute. Statutes authorizing awards to private complainants are found in some jurisdictions . . . ." The matter remains open in this jurisdiction.

In jurisdictions where payment of fines in contempt proceedings have been ordered, a judgment for a fixed fine is called civil contempt if the court orders the fine paid to the complainant. *Fox v. Capital Co.*, 299 U.S. 105; *Lamb v. Cramer, supra; Raymor, Ballroom Co. v. Buck, supra*, p. 211; *Root v. MacDonald, supra; Kreplik v. Couch Patents Co., supra*. But if the "fine is imposed partly as compensation to the complainant and partly as punishment, the criminal feature of the order is dominant . . . ." *Nye v. United States*, 313 U.S. 33, 42; *Germán v. District Court, supra; People v. P.R.R.L. & P. Co.*, 59 P.R.R. 221–23. "When a fine is ordered paid to the state, the judgment is punitive and the proceeding is considered one for criminal contempt." Moskovitz, *supra*, p. 790, and cases cited.

axiomatic distinction between criminal (punitive) and civil (remedial) contempt. But the problem has arisen only in cases where we were required to determine whether the procedure on appeal in a particular case should be civil or criminal. See cases cited in footnote 5, *supra*.

In the case of *Germán* v. *District Court, supra,* at page 591, footnote No. 3, we said:

"We do note, however, that Act No. 102, Laws of Puerto Rico, 1937, leaves no room for speculation on the question before us, as to cases brought under that Act, in view of its specific provision that such cases involve criminal contempt . . . ." (Italics ours.)

Section 7 of the Code of Civil Procedure (1933 ed.) provides that every court has power:

"4. To compel obedience to its judgments, orders, and processes, and the orders of a judge out of court, in an action or proceeding pending therein."

Section 28 of the same code provides that every judicial officer has power: "2. To command obedience to his lawful orders, as provided in this Code." And § 29 prescribes that "For the effectual exercise of the powers conferred by the last section, a judicial officer may punish 'for contempt in the cases provided in this Code." The Code of Civil Procedure contains no provision limiting the power conferred on the courts and judicial officers to punish for civil contempt.

In the case of *Germán* v. *District Court, supra,* this court refrained from considering or determining, as not involved in the proceeding the question of "under what circumstances, if any, a sentence for other than a fixed term could be imposed." (Footnote No. 3, p. 591.)

The opinion of the Federal Supreme Court in *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 55 L. ed. 797, throws considerable light upon the question we are now considering. There a motion was filed to punish Gompers and two other defendants for contempt in violating an order of injunction issued in a civil case whereby they were restrained from

continuing a boycott against the complainant company. The order of injunction was of a preventive character; and the respondents were charged with having violated it by doing what the order specifically prohibited. The lower court sentenced the respondents to jail for fixed terms. The Supreme Court reversed that judgment, saying:

"It is not the fact of punishment but rather its character and purpose that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.

"For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless these were special elements of contumacy, the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in *In re Nevitt*, 117 Fed. Rep. 451, 'he carries the keys of his prison in the own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.

"On the other hand, if the defendant does that which he has been commanded not to do, the disobedience is a thing accomplished. Imprisonment cannot undo or remedy what has been done nor afford

any compensation for the pecuniary injury caused by the disobedience. If the sentence is limited to imprisonment for a definitive period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience.''

In *Commonwealth* v. *Lewis,* 98 Atl. 31 (Pa.), the respondent was committed to jail until he should comply with an order of the court directing him to remove a building. The order of commitment was affirmed, as follows:

''Under the foregoing statutes and authorities, the provision of the act of 1836, limiting the power of imprisonment to contempts which occurred in the presence of the court, has no application to cases of attachments to enforce civil remedies, where the object is to secure compliance with a decree of court. The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would in many cases be useless. 'All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless.' (Citing authorities.) In *Commonwealth ex rel. Tyler* v. *Small,* 26 Pa. 31, it was said (page 42):

'The imprisonment of the party who is in contempt is one of the ordinary steps in all proceedings of this kind, and is usually ordered as a matter of course, until he submits; and as one of the means of enforcing the decree in favor of the plaintiff.' ''

See *City of Scranton* v. *People's Coal Co.,* 117 Atl. 673 (Pa.); *In re Stein,* 7 F. (2d) 169; *Denny* v. *State,* 182 N. E. 313, 318 (Ind.).

We are of the opinion that in a civil contempt case like the one at bar, wherein the contempt consists in the obstinate and contumacious refusal on the part of the respondents to obey the order which had been lawfully issued by the lower court for the delivery to the marshal of the certificate of stock owned by the defendant, the district court acted with full power and within the limits of its jurisdiction in rendering the judgment appealed from. The incarceration of the re-

spondents is not a punishment imposed upon them for their disobedience to the order of the court but a coercive remedy to compel them to do that which the court has commanded them to do. The respondents will carry with them into jail the keys which may set them free. They can recover *ipso facto* their freedom by surrendering the certificate in obedience to the order of the court.

The remaining three assignments lack merit. We have already stated that the evidence to which the lower court accorded credit and the special circumstances of the case justify the judgment appealed from. The petition filed by the plaintiff stated facts sufficient to justify the issuance of the rule to show cause. We fail to find in the record of the case any fact or circumstance which would justify the charge made that the trial judge acted under the influence of passion, prejudice, or partiality.

The judgment appealed from should be affirmed.