Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br>Hon. Gloria M. Sierra Enríquez | 2012 TSPR 99<br><br>185 DPR ____ |

Número del Caso: AD-2011-2

Fecha: 12 de junio de 2012

Comisión de Disciplina Judicial

Abogado de la Parte Promovente:

>            Lcda. Marisela Vázquez Marrero
>            Lcdo. Felix Fumero Pugliessi

Abogado de la Parte Querellada:

>            Lcdo. Juan R. Acevedo
>            Lcdo. Efraín Ruiz

Materia: Acción Disciplinaria – Suspensión de empleo y sueldo por el término de un (1) mes, por violación a los Cánones 4, 8, 9 y 14 de Ética Judicial

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Gloria M. Sierra Enríquez        AD-2011-2

PER CURIAM

San Juan, Puerto Rico, a 12 de junio de 2012.

En esta ocasión, debemos evaluar la conducta de una Jueza Superior que mostró impaciencia, falta de temperamento y severidad excesiva contra un ciudadano por este comparecer a un procedimiento criminal en su contra sin representación legal. Por entender que su proceder atenta contra la fibra misma de nuestro sistema de justicia y quebranta la confianza que debe promover el sistema en los jueces y juezas, suspendemos a la Hon. Gloria M. Sierra Enríquez de empleo y sueldo por un término de un mes.

I.

La Hon. Gloria M. Sierra Enríquez juramentó como Jueza Superior el 23 de julio de 2004. En agosto de

2008, pasó a ocupar una posición en el Tribunal de Manatí, que incluye presidir la Sala donde se ventilan casos criminales menos graves. Ese mismo año, presidió el caso Pueblo v. Héctor L. Rivera Marín, Crim. Núm. 2008-583. El Sr. Héctor L. Virella Marín fue acusado de cometer el delito menos grave de Intrusión a la Tranquilidad Personal, según codificado en el artículo 189 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4817.[1]

En la denuncia presentada en contra del señor Virella Marín, se le imputó haber cometido conducta constitutiva del referido delito cuando alegadamente profirió a la Agente Esther Castillo Lozano lenguaje amenazante y abusivo mediante una llamada telefónica. El 29 de septiembre de 2008, se determinó causa probable contra el señor Virella Marín, quien había laborado como policía por once años, hasta que un accidente de tránsito motivó su retiro por incapacidad.

El 3 de noviembre de 2008, se celebró el primer señalamiento del caso en la Sala Superior de Manatí. El señor Virella Marín compareció por derecho propio. Por su parte, la Fiscal Jennifer Cancio expresó que el Ministerio Público estaba preparado y que toda la prueba de cargo estaba presente.

---

[1] "Toda persona que por medio del teléfono, o del correo electrónico, o por cualquier otro medio profiera o escriba a otra lenguaje amenazante, abusivo, obsceno o lascivo; o que con el propósito de molestar a cualquier persona efectúe repetidamente llamadas telefónicas u ocasione que el teléfono de otra persona dé timbre repetidamente, o toda persona que autorice con conocimiento que cualquier teléfono bajo su control sea utilizado para cualquier propósito prohibido en este artículo, incurrirá en delito menos grave".

Al inicio de la vista, la Jueza Sierra Enríquez inquirió al señor Virella Marín sobre su representación legal. A continuación, transcribimos el diálogo entre ambos:

HON. JUEZ: ¿Don Héctor Virella?

SR. VIRELLA MARÍN: Servidor. Vamos a solicitar del Honorable Tribunal que se cite oficialmente a un grupo de personas como testigos de reputación y mi señor hermano que no está presente…

HON. JUEZ: ¿Usted se está representando por…

SR. VIRELLA MARÍN: Derecho propio.

HON. JUEZ: …sí mismo. ¿Por derecho propio?

SR. VIRELLA MARÍN: En este momento, sí, su señoría.

HON. JUEZ: O sea, que está renunciando a abogado. ¿Y cómo usted va a contrainterrogar y a contrainterrogarse?

SR. VIRELLA MARÍN: ¿Discúlpeme?

HON. JUEZ: ¿Usted está renunciando también a su derecho a autoincriminación?

SR. VIRELLA MARÍN: En este momento no.

[…]

HON. JUEZ: Fiscal, ¿cómo podría este señor entonces representarse a sí mismo en un caso criminal… como este?

SR. VIRELLA MARÍN: Discúlpeme. Solicitamos del tribunal que se cite oficialmente a unos testigos de reputación…

HON. JUEZ: Pues, este tribunal (…) le va a ordenar oficialmente que contrate un abogado. Que yo no veo cómo usted se pueda representar a sí mismo en un caso criminal sin que se autoincrimine (…) ¿De qué usted vive, don Héctor?

SR. VIRELLA MARÍN: En estos momentos, estoy recibiendo una compensación militar

HON. JUEZ: Por lo tanto, tiene dinero para contratar un abogado.

SR. VIRELLA MARÍN: No suficiente, Su Señoría.

HON. JUEZ: ¿No tiene? O sea, ¿usted se reitera en que no va a contratar abogado?

SR. VIRELLA MARÍN: Puedo hacer las gestiones para un abogado en una fecha… posterior.

[…]

HON. JUEZ: Pues yo le aconsejo que lo haga. Porque va a ser so pena de desacato, entonces sería otra… otra… otro posible delito en el cual usted estuviera implicado. Y entonces, su abogado que cite a los testigos que sean.

[…]

SR. VIRELLA MARÍN: Sí, su Señoría.

Luego, la Jueza Sierra Enríquez preguntó al señor Virella Marín los nombres de los testigos que interesaba citar para la vista en su fondo. Además, reseñaló la vista para el 26 de enero de 2009, a las 9:00 a.m.

Así las cosas, el 26 de noviembre de 2008, el señor Virella Marín presentó una moción por derecho propio, en la que solicitó al tribunal que le asignara un abogado. Expresó que su "situación económica en este momento no es favorable para pagar un abogado de la práctica privada". Asimismo, detalló que acudió a la Oficina de Servicios Legales de Manatí y Arecibo y a las oficinas de Pro Bono, Inc. para recibir representación legal por su condición de indigente. Adujo que su ingreso era de novecientos sesenta y dos dólares ($962.00) mensuales para cinco dependientes. Sin embargo, alegó que ambas entidades le informaron que no podían representarlo por ser acusado de un delito menos grave, a

pesar de que carecía de recursos económicos suficientes para contratar un abogado.[2]

La Jueza Sierra Enríquez denegó su petición el 9 de diciembre de 2008. Sostuvo: "Aténgase a lo dispuesto en la vista de 24 de noviembre de 2008. Debe comparecer con abogado a la vista". Inconforme, el 19 de diciembre de 2008, el señor Virella Marín presentó una segunda moción por derecho propio, en la que solicitó las razones por las cuales su solicitud de asignación de un abogado no fue aprobada. Ante esto, el 29 de diciembre de 2008, la Jueza Sierra Enríquez reiteró: "Aténgase a la minuta del 3 de noviembre de 2008".

De la queja presentada por el señor Virella Marín surge que, en enero de 2009, este acudió a la Oficina del Programa de Ayuda Legal del Municipio de Manatí. Allí, entregó los documentos que le habían requerido y la Lcda. Yaítza Maldonado Rivera le informó que, como no había podido entrevistar a los testigos y el caso se vería ese mismo mes, le solicitaría al Tribunal una fecha posterior para la vista.

Llegado el 26 de enero de 2009, se celebró la segunda vista criminal contra el señor Virella Marín, según pautada. Comparecieron el acusado, los testigos que solicitó citar, el Fiscal Peter Cordero en representación del Ministerio

---

[2] La Moción por Derecho Propio dice: "por este medio solicito de Tribunal de Manatí se me acine [sic.] un abogado para el día 22 enero 2009 a las 8:30 AM ya que mi situación económica en este momento no es favorable para pagar un abogado de la práctica privada. Se hicieron gestiones en la oficina Servicio [sic.] Legales de Manatí y Arecibo y Probono indicándome soy elegible para los servicio [sic.] de abogado pero la mensualida [sic.] que recibo $962.00 para 5 persona (sic) pero que no me podían reprecental [sic.] por ser un delito meno [sic.] grave."

Público, la supuesta perjudicada y un testigo de la fiscalía. La Jueza Sierra Enríquez preguntó al acusado quién era su abogado. Él respondió que lo representaba la licenciada Maldonado Rivera. Acto seguido, la magistrada le preguntó dónde estaba su abogada y el acusado explicó que ella le había informado que solicitaría al Tribunal que citara el caso para otro día, ya que tenía un caso importante en Arecibo. Un abogado que estaba presente en la sala confirmó que la licenciada Maldonado Rivera estaba en Arecibo y añadió que él la sustituyó en la mañana. Sin embargo, expresó que la licenciada Maldonado Rivera no le habló del señor Virella Marín.

Así las cosas, la Jueza Sierra Enríquez concedió un turno posterior, para que el señor Virella Marín se comunicara con la licenciada Maldonado Rivera. Más tarde, esta última hizo una comparecencia especial y expresó que

> El caballero estuvo por nuestra oficina, nosotros lo orientamos. Como es parte (…) de los trámites que hacemos (…) en la División Legal del Municipio de Manatí. Se le advirtió que el caso nosotros no lo estábamos aceptando y que tomaríamos… nosotros teníamos otro asunto en la mañana de hoy y que en caso de que lo pudiéramos representar, debido a que teníamos otros 4 asuntos en Arecibo, le orien… le diríamos y le advertimos que también buscara representación porque ya usted le había dado otra oportunidad.

Luego, la Jueza Sierra Enríquez, sin proveerle al señor Virella Marín una oportunidad de brindar su versión sobre el asunto, concluyó:

> HON. JUEZ: Este señor no solamente ha desacatado al tribunal, sino que ha mentido ante este tribunal en el día de hoy. Así que este tribunal le impone al señor un Desacato Sumario por haberle mentido a este Tribunal frente a todas estas personas que

están aquí presentes y haber hecho a esta abogada venir de donde estaba atendiendo otros clientes. Se le impone una multa de $500.00 por este Desacato y se le impone otro Desacato por haber venido sin abogado. Son dos desacatos. Usted tenía que haber venido aquí con abogado, lo sabía, no sabemos si por eso fue que dijo que ésta era su abogada. Así que no solamente vino sin abogado, sino que le miente al tribunal diciendo que su abogada es la licenciada Maldonado, hecho que no es cierto. Así que se le va, tiene $1,000.00 por los dos Desacatos a ser cumplidos antes de las 3:00 de la tarde del día de hoy…

(…)

Toda la prueba y son agentes del orden público que repito, han estado todo el día ausente de sus funciones, y las acusaciones que hay en su contra es en cuanto a la Agte. Esther Castillo Lozano ¿no? Y usted citó a toda esta gente, que son agentes del orden público, ¿verdad? Los citó para que perdieran su día haciéndole creer al tribunal que usted tenía abogado, ¿qué usted va a hacer ahora? ¿qué usted va a hacer ahora?

(…)

Y para mí se me hace sumamente difícil pedirle a alguno de los abogados aquí presentes que lo representen a usted, porque yo no voy a poner ningún abogado en esa situación. Más cuando usted le ha mentido al propio Tribunal.

LICENCIADA MALDONADO: Señoría, pedimos permiso para retirarnos, por favor.

HON. JUEZ: Queda excusada, licenciada. Muchas gracias por su presencia aquí y el tribunal se va a reconsiderar en cuanto a uno de los desacatos que fue el de venir sin abogado. Tiene los $500.00 pesos, pero en cuanto al otro desacato, este Tribunal tiene la potestad de imponerle cárcel, y usted lo sabe. Y yo le voy a imponer 10 días, en cuanto a haberle mentido al tribunal. Yo no sé ni qué hacer, para citar este caso nuevamente. Cuatro agentes que han perdido el día entero. ¿Usted va a conseguir abogado, señor?

SR. VIRELLA MARÍN: Sí, su Señoría.

HON. JUEZ: Eso mismo me dijo la última vez, y quisiera que escucháramos la grabación. Sí su Señoría, así me dijo la última vez, que iba a conseguir abogado. Si no consigue abogado tiene

otro desacato, que lo sepa, así que él se va ingresado en el día de hoy por 10 días y tiene $500.00 de multa por el otro desacato, y vamos a señalarle la vista con suficiente antelación para que contrate abogado.

Luego, mientras coordinaban el señalamiento para la próxima vista, la Jueza Sierra Enríquez expresó que para esa fecha "si viene sin abogado nuevamente desacata al tribunal y se va 10 días de nuevo" encarcelado. Esa misma tarde, la Jueza Sierra Enríquez emitió dos órdenes declarando culpable al señor Virella Marín del delito de Desacato Criminal. En la orden que condenó al acusado a cumplir diez días de cárcel, la Jueza Sierra Enríquez se fundamentó en que "le mintió al Tribunal al informar que su abogada era la Lcda. Yaítza Maldonado, cuando no era cierto, según confirmó la abogada". De la segunda orden, se desprende que la Jueza Sierra Enríquez le impuso al acusado, quien precisamente alegaba indigencia, una pena de "$500 de multa… o un (1) día de cárcel por cada $50 que deja de pagar". Se fundamentó en que "se presentó sin abogado, habiéndosele ordenado en varias ocasiones".

Concluida la vista, el señor Virella Marín fue ingresado en la Institución Correccional Guerrero en Aguadilla. Estuvo encarcelado durante diez días y fue puesto en libertad el 5 de febrero de 2009. También pagó la multa de quinientos dólares ($500.00). Así, cumplió la condena impuesta en su totalidad.

Cinco días después de recobrar su libertad, la Administración del Seguro Social le envió una carta informándole que le suspendería los beneficios de Seguro

Social debido a que advino en conocimiento de que el señor Virella Marín estaba "encarcelado por la sentencia de un crimen".

Posteriormente, se celebró la tercera vista contra el señor Virella Marín, quien compareció representado por el Lcdo. Paolo J. Pérez Román. Este último solicitó el traslado del caso ante otro magistrado, pues entendía que se había mancillado la credibilidad de su cliente por el incidente del desacato. Así pues, la Jueza Sierra Enríquez ordenó el traslado del caso y del expediente al Tribunal de Primera Instancia, Sala de Ciales.

La cuarta vista para atender el caso se celebró el 1 de abril de 2009 en la sala mencionada. Fue presidida por la Hon. Eugenia M. Cruz Sánchez, Jueza Superior de la Región Judicial de Arecibo, quien **resolvió rápidamente el caso cuando la agente Castillo Lozano aceptó las disculpas del señor Virella Marín y le extendió la mano**. Ello, previo a iniciarse el desfile de prueba. De esta manera, la Jueza Cruz Sánchez emitió una sentencia en la que ordenó el archivo y sobreseimiento del caso, a petición del Ministerio Público, en virtud de la Regla 247(A) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Finalmente, el 4 de marzo de 2009, el señor Virella Marín presentó una queja juramentada contra la Jueza Sierra Enríquez, para reclamar las razones por las cuales no le asignó un abogado de oficio, a pesar de sus solicitudes por escrito, en violación de sus derechos civiles y constitucionales. Además, solicitó una investigación,

alegando que la Jueza Sierra Enríquez le violó su dignidad como ser humano. Expresó que quería evitar que otro ciudadano pase por la experiencia desagradable de que sus familiares e hijos presencien cómo es llevado a la cárcel esposado de pies y manos como un criminal.

Luego de la investigación correspondiente, la Oficina de Administración de los Tribunales (OAT) sometió ante la Comisión de Disciplina Judicial el Informe de Investigación, con su Apéndice, para la determinación de existencia o inexistencia de causa probable para continuar el procedimiento disciplinario.

Oportunamente, el Comisionado Asociado, Lcdo. Ángel F. Rossy, determinó causa probable para la presentación de una querella, por violación a los Cánones 4, 8, 9 y 14 de Ética Judicial. Así pues, el 2 de junio de 2011, la Comisión emitió y notificó una Resolución mediante la cual instruyó a la OAT a formular una Querella contra la Jueza Sierra Enríquez.

Consecuentemente, la OAT presentó la querella correspondiente y formuló tres cargos contra la Jueza Sierra Enríquez. En el primer cargo, se le imputó a la querellada violar los Cánones 4 y 8 de Ética Judicial. Ello, por ignorar el Reglamento para la Asignación de Abogados(as) de Oficio en Procedimientos de Naturaleza Penal y desatender los reclamos del acusado para que se le asignara representación legal de oficio, toda vez que alegaba ser indigente. Asimismo, se le imputa violar los derechos constitucionales del señor Virella Marín, vulnerar el debido proceso de ley e infringir su deber

ético de ser cuidadosa y rigurosa en el estudio y aplicación del derecho.

En el segundo cargo, se le imputó a la Jueza Sierra Enríquez violar los Cánones 8 y 9 de Ética Judicial, al no brindarle al señor Virella Marín la oportunidad de rebatir la declaración ambigua de la licenciada Maldonado Rivera de que ella no era su abogada. La OAT encontró que, de las expresiones de la abogada, surgían elementos que sugerían la posibilidad de que ella pudo haberle creado expectativas al señor Virella Marín de que lo representaría. Según la OAT, el proceder de la querellada constituyó conducta impropia, en perjuicio y total menoscabo de los derechos del quejoso.

En el tercer cargo, se le imputó a la querellada infringir el Canon 14 de Ética Judicial, al abusar de su discreción y aplicar severidad excesiva a los hechos de este caso, en violación a los derechos fundamentales del señor Virella Marín. La OAT encontró que, al imponer los dos desacatos al acusado, la Jueza Sierra Enríquez fue parcial, mostró impaciencia y severidad excesiva, y no mantuvo su conducta dentro de la debida propiedad y circunspección.

Por su parte, la Jueza Sierra Enríquez presentó su contestación a la querella. En esencia, negó los cargos que se le imputan. En particular, invoca como defensa su buena reputación entre quienes asisten a su sala. También, alega que sus acciones constituyen, a lo sumo, un error de hechos o derecho en el desempeño de sus funciones judiciales, lo cual no constituye causa para disciplinarla. Asimismo, argumenta que no estaba obligada a determinar la indigencia del señor

Virella Marín y asignarle abogado de oficio. Incluso, justifica que, para el momento de los hechos, no existía una lista para la designación de abogado de oficio en delitos menos graves para el Tribunal de Manatí. Además, alega que el señor Virella Marín no invocó expresa e inequívocamente el derecho a auto-representarse y que el querellante no era indigente, a base de la totalidad de las circunstancias que la querellada tuvo ante sí. Igualmente, aduce que la imposición de una pena desproporcionada a los hechos delictivos o reñidos por la Ley o la Constitución no constituye necesariamente conducta antiética. También, señala que se trata de un acto aislado que no refleja una conducta intencional en abierto desafío al estado de derecho vigente.

Posteriormente, ambas partes presentaron un acuerdo de estipulación de hechos y de documentos. En este, la Jueza Sierra Enríquez aceptó que sus actuaciones ameritaban una amonestación.

Después de recibir dicho acuerdo, la Comisión de Disciplina Judicial celebró una vista evidenciaria, en la que se admitió y marcó la evidencia documental estipulada. Por su parte, la OAT se reafirmó en su posición de que la querellada infringió los Cánones 4, 8, 9 y 14 de Ética Judicial, 4 L.P.R.A. Ap. IV-B. Sin embargo, la Jueza Sierra Enríquez sostuvo que solamente violó el Canon 4 "a los efectos de que no se interpretaron correctamente los reglamentos de la Rama Judicial". La Comisión aceptó resolver el caso por el expediente pero se reservó el derecho a aceptar o no el acuerdo sobre que la medida disciplinaria a imponerse fuera

una amonestación. Además, concedió a las partes un término para que presentaran por escrito su posición en cuanto a los cánones infringidos.

Finalmente, la Comisión de Disciplina Judicial concluyó que existe prueba clara, robusta y convincente de que la Jueza Sierra Enríquez en efecto cometió todos los cargos imputados, al violar los Cánones 4, 8, 9 y 14 de Ética Judicial. Detalló que la Jueza Sierra Enríquez admitió haber violado el Canon 4 de Ética Judicial por su incumplimiento con el procedimiento reglamentario de asignación de abogados de oficio. Además, sostuvo que la querellada violó el Canon 8 cuando disuadió al señor Virella Marín de ejercer su derecho a comparecer por derecho propio, basándose en un desconocimiento elemental del procedimiento criminal.

De la misma forma, luego de señalar que la querellada no escuchó la posición del señor Virella Marín antes de imponerle el desacato, la Comisión determinó que la querellada violó el Canon 8 al no ejercer "la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia" y que además violó el Canon 9 al no conceder al querellante "la oportunidad de ser oído" y, por ende, el derecho constitucional a un debido procedimiento de ley.

Respecto a la imposición de ambos desacatos, la Comisión concluyó que la Jueza Sierra Enríquez violó el Canon 14 al utilizar una severidad excesiva y permitir que el reclamo del querellante de su derecho constitucional y estatutario a un abogado influyera negativamente en su determinación judicial.

En cuanto a la sanción a imponerle a la querellada, la Comisión señaló que las estipulaciones entre las partes no obligan al tribunal. Por ello, sugirió que impongamos a la Jueza Sierra Enríquez

> una sanción más severa y contundente. La misma enviará un mensaje prístino e inequívoco de que es inaceptable, más que obviar la aplicación de un reglamento administrativo, violentar el debido proceso de ley de un ciudadano y condenarlo a la cárcel irreflexivamente. Entendemos que la violación del primer cargo por sí sola amerita una amonestación. No obstante, en este caso concluimos que existe prueba clara, robusta y convincente de que la querellada violó **todos** los cargos imputados. Por tanto, recomendamos que este Honorable Foro Judicial imponga a la Jueza Sierra una suspensión de empleo y sueldo por el término que consideren prudente. Informe de la Comisión, págs. 27-28. (Énfasis en el original).

Inconforme con dicha recomendación, la Jueza Sierra Enríquez presentó ante nos un escrito titulado "Comparecencia de la querellada Hon. Jueza Gloria M. Sierra Enríquez solicitando revisión Informe Comisión Disciplina Judicial", en el que reafirmó las alegaciones que hizo en su contestación a la querella.

Luego de evaluar detenidamente el Informe rendido por la Comisión de Disciplina, escuchar el audio de las vistas judiciales en controversia y de considerar la prueba pertinente, las alegaciones de la Jueza Sierra Enríquez y el derecho aplicable, estamos en posición de resolver.

## II.

A. Debido proceso de ley y el derecho a asistencia de abogado

La Constitución del Estado Libre Asociado de Puerto Rico dispone que ninguna persona será privada de su libertad o

propiedad sin debido proceso de ley. Art. II Sec. 7 Const. E.L.A., L.P.R.A., Tomo 1. Asimismo, nuestra Constitución garantiza a los acusados tener la asistencia de un abogado en todos los procesos criminales. Art. II Sec. 11 Const. E.L.A., L.P.R.A., Tomo 1. La Enmienda Sexta de la Constitución de Estados Unidos también garantiza lo anterior. Enmda. VI, Const. E.E. U.U. L.P.R.A., Tomo 1.

Para cumplir este mandato constitucional, el 1 de septiembre de 2008, entró en vigor el Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal. In re: Aprobación del nuevo Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, 173 D.P.R. 653 (2008). Este tiene como objetivo brindar representación legal a los imputados indigentes que no puedan ser representados por la Sociedad para la Asistencia Legal (SAL) u otra entidad análoga. Íd. La determinación inicial sobre la indigencia la realizará la SAL o la entidad análoga. Íd. En aquellos casos donde no se haya evaluado la capacidad económica de una persona imputada de delito que alega indigencia, el tribunal la referirá a la SAL o a la entidad análoga correspondiente. Íd. De no ser posible lo anterior, el tribunal realizará la determinación de indigencia a la luz de los criterios que establezca el Director o Directora de la OAT. Íd.

Por otro lado, nuestro ordenamiento jurídico también reconoce el derecho a renunciar a la asistencia de abogado y comparecer por derecho propio ante un tribunal, mediante la auto-representación. Pueblo v. Cruzado Laureano, 161 D.P.R.

840, 844-847 (2004); Lizarribar v. Martínez Gelpí, 121 D.P.R. 770, 784 (1998). Véase, además: Faretta v. California, 422 U.S. 806, 818 (1975). Sin embargo, este derecho no es absoluto. Pueblo v. Cruzado Laureano, *supra*, pág. 846; Lizarribar v. Martínez Gelpí, *supra,* pág. 777. Para evaluar si procede que una persona comparezca por derecho propio, hemos establecido los siguientes criterios:

> (a) la representación, como regla general, no puede ser híbrida, esto es, no debe estar representado por abogado y a la misma vez representarse por derecho propio; (b) la decisión tiene que haber sido tomada voluntariamente, de manera inteligente y con pleno conocimiento de causa; (c) tiene que hacerse mediante solicitud expresa (inequívoca) al tribunal; (d) debe ser formulada oportunamente, pues mientras más adelantado el proceso, mayor la discreción del juez para denegarla; (e) se tomará, además, en consideración la demora o interrupción de los procedimientos y su efecto sobre la adecuada administración de la justicia; (f) deberá atender asimismo el tribunal al factor de la calidad de la representación que la parte habrá de ser capaz de procurarse, así como la complejidad de la controversia a adjudicarse; (g) la parte o el acusado tendrá el deber de cumplir esencialmente con las reglas procesales y el derecho sustantivo aplicable, aunque no se requerirá un conocimiento técnico de los mismos; (h) no está obligado el magistrado a ilustrar a quien opte por tal derecho acerca de esas leyes o reglas; (i) el magistrado tampoco viene obligado a nombrarle abogados asesores durante el proceso; (j) el magistrado no tiene el deber de inquirir respecto a las razones por las cuales ha elegido la representación por derecho propio, aunque en los casos que estime conveniente podría así hacerlo, y (k) finalmente, el magistrado tampoco tiene la obligación de informar al acusado o a las partes de su derecho a la autorrepresentación. Pueblo v. Cruzado Laureano, *supra*, págs. 846-847; In re Scherrer Caillet-Bois, 162 D.P.R. 842 (2004).

## B.  El Desacato

El desacato es un procedimiento *sui generis* que exige la inmediata intervención del tribunal. In re Cruz Aponte, 159

D.P.R. 170, 182 (2003); Pueblo v. Torres, 56 D.P.R. 605, 623 (1940). Existen dos tipos de desacato: el civil y el criminal. Pueblo v. Vega, Jiménez, 121 D.P.R. 282, 290 (1988). El desacato civil tiene un propósito reparador: inducir a alguien a cumplir con una obligación. Íd.,pág. 299, citando a Shillitani v. United States, 384 U.S. 364 (1966). Por otra parte, el desacato criminal tiene como objetivo vindicar la autoridad del tribunal. Íd., citando a States v. Mine Workers, 330 U.S. 258 (1947); In re Cruz Aponte, *supra,* pág. 182. En particular, hemos expresado que la conducta meritoria de la imposición de un desacato criminal es aquella que interrumpa los procedimientos llevados a cabo en el foro judicial y menoscabe el respeto debido al tribunal. Pueblo v. Lamberty, 112 D.P.R. 79, 82 (1982); Dubón v. Casanova, 65 D.P.R. 835, 844-845 (1945). En el caso de desobedecer alguna orden del Tribunal, será necesario que el Estado demuestre la intención del acusado de desobedecer el mandamiento. Pueblo v. Concepción Fonseca, 104 D.P.R. 357 (1973).

En lo pertinente al caso ante nos, la penalidad por un desacato criminal podrá ser un término fijo de encarcelación o una multa fija, independientemente del cumplimiento o incumplimiento con la orden original. E.L.A. v. Asoc. de Auditores, 147 D.P.R. 669, 685 (1999); Pérez v. Espinosa, 75 D.P.R. 777, 781 (1954).

El procedimiento a seguir para la imposición de este desacato está decretado en la Regla 242 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual dispone lo siguiente:

(a) Procedimiento sumario. El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal.

(b) Procedimiento ordinario. Salvo lo provisto en el inciso (a) de esta regla, en todo caso de desacato criminal se le dará al acusado previo aviso la oportunidad de ser oído. El aviso expondrá el sitio, hora y fecha de la vista, concederá al acusado un tiempo razonable para preparar su defensa, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. El acusado tendrá derecho a su libertad provisional bajo fianza de acuerdo con las disposiciones de estas reglas. Si el desacato se fundara en actos o conducta irrespetuosa hacia un juez, éste no podrá conocer de la causa excepto con el consentimiento del acusado.

Por nuestra parte, hemos sostenido que "los jueces deben utilizar el desacato como última alternativa para vindicar la dignidad del tribunal, debido a que el uso indiscriminado de este instrumento equivaldría a una falta de temperamento judicial". In re Cruz Aponte, supra, pág. 181. De hecho, hemos sido categóricos al reiterar que el desacato no puede convertirse en un instrumento de opresión que destruya el propio orden e integridad del proceso que la ley quiso mantener. Íd., pág. 185; Pueblo v. Susoni, 81 D.P.R. 124, 157-158 (1959).

En circunstancias extremas, la imposición de un desacato podría considerarse como una violación al Código de Ética Judicial que amerite la imposición de sanciones disciplinarias. In re Díaz García, 158 D.P.R. 549, 559 (2003). Para que se justifique la destitución de un juez que

incurre en este tipo de errores, tiene que demostrarse que el error cometido constituyó un abuso intencional de la discreción judicial o que su magnitud demuestra un favoritismo o una conducta impropia hacia alguna parte. In re Jackson Sanabria, 97 D.P.R. 1 (1969).

Debe quedar claro que no se puede invocar nuestra jurisdicción disciplinaria para que pasemos juicio sobre un dictamen judicial, en sustitución de los mecanismos de revisión que nuestro ordenamiento jurídico provee. Por ello, en respeto a la independencia de nuestros jueces y juezas para decidir, enmendamos recientemente la Regla 3 de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B, para consignar que "no será investigada aquella queja o solicitud de separación que… (b) pretenda intervenir impropiamente con determinaciones judiciales…". Véase In re Emda. R. 3 Disciplina Judicial, 182 D.P.R. 533, 537 (2011).

Ahora bien, la misma Regla 3 de Disciplina Judicial, *supra,* señala que podemos disciplinar a un juez o una jueza por "(a) violación a la ley, a los Cánones de Ética Judicial, el Código de Ética Profesional, a las órdenes y normas administrativas aplicables [y] por negligencia crasa, inhabilidad o incompetencia profesional manifiesta en sus deberes judiciales…". Al respecto, hemos señalado que "las motivaciones indebidas y antiéticas que causen la demora en el trámite de uno o más casos…" puede dar lugar a sanciones disciplinarias contra un juez o una jueza. In re Pagani Padró, 181 D.P.R. 517, 530 (2011). También procede el ejercicio de nuestra jurisdicción disciplinaria si se

demuestra "un patrón de incompetencia manifiesta del juez o de la jueza en el desempeño de sus funciones judiciales". Íd.

### C. Cánones de Ética Judicial

Nuestra Constitución confiere autoridad a esta Alta Curia para llevar a cabo los procedimientos disciplinarios relacionados con los jueces y juezas del Tribunal de Primera Instancia y el Tribunal de Apelaciones. Art. V Sec. 11 Const. E.L.A., L.P.R.A., Tomo 1. A esos efectos, aprobamos los Cánones de Ética Judicial. 4 L.P.R.A. Ap. IV-B. Estos imponen a los jueces una serie de deberes, con el fin de promover la confianza del Pueblo en nuestro sistema judicial y mantener la fe de la ciudadanía en la justicia. In re: Pedro Claverol Siaca, 175 D.P.R. 177, 188 (2009); In re González Acevedo, 165 D.P.R. 81, 91-93 (2005). A la Jueza Sierra Enríquez se le imputa haber violado los Cánones 4, 8, 9 y 14 de Ética Judicial. Veamos qué disponen.

El Canon 4 de Ética Judicial impone a los jueces y juezas las siguientes obligaciones administrativas:

> Las juezas y los jueces cumplirán cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial. También cumplirán diligentemente las normas y órdenes administrativas pertinentes de la Oficina de Administración de los Tribunales. 4 L.P.R.A. Ap. IV-B, C. 4.

Más adelante, el Canon 8 del mismo cuerpo legal atiende el desempeño de los jueces y juezas en sus funciones adjudicativas. En lo pertinente, establece lo siguiente:

> Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre

de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia. 4 L.P.R.A. Ap. IV-B, C. 8.

Al respecto, hemos expresado que esta norma disciplinaria busca evitar que los jueces o las juezas tomen decisiones "ensoberbecidos por el poder". In re Cruz Aponte, supra. Asimismo, como puede apreciarse, este Canon impone a los magistrados y magistradas la obligación de mantenerse al día en el estudio del derecho. También, este Canon les ordena que sean diligentes en descubrir todos los hechos esenciales de cada controversia.

Con relación a lo anterior, el Canon 9 de Ética Judicial dictamina, en lo pertinente, que

Las juezas y los jueces concederán a toda persona que tenga interés en un procedimiento o la abogada o al abogado de dicha persona el derecho a ser oída conforme lo dispone la ley. En el cumplimiento de este deber, resolverán cada controversia fundamentándose en su propia evaluación de la prueba presentada. Los jueces y las juezas no permitirán que el reclamo por las partes de sus derechos constitucionales y estatutarios influya negativamente al hacer sus determinaciones judiciales. 4 L.P.R.A. Ap. IV-B, C. 9.

En los comentarios de esta norma ético-disciplinaria, expresamos que el reconocimiento del derecho de la persona a ser oída enfatiza la importancia de que los magistrados y magistradas garanticen el debido proceso en el desempeño de la función adjudicativa. Así pues, las juezas o los jueces que penalizan a una parte por el hecho de que esté reclamando aquello a lo que cree que legítimamente tiene derecho, actúan

ilícitamente, proyectan falta de imparcialidad y podrían estar incurriendo en conducta antiética. In re Díaz García, 158 D.P.R. 549, 557-558 (2003). Particularmente, para que un error de hecho o de derecho configure una conducta antiética violatoria de este Canon 9, se requiere probar que el error cometido constituyó un abuso intencional de la discreción judicial, o que fue de tal magnitud que reflejó conducta impropia o favoritismo. Íd.

Por último, el Canon 14 de Ética Judicial, sobre conducta en los procedimientos judiciales, establece:

> En el curso de los procedimientos judiciales, las juezas y los jueces mantendrán su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco harán comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa. No ridiculizarán de modo alguno a abogadas, abogados, partes, testigos, funcionarias o funcionarios del tribunal ni a otras personas que acudan ante el tribunal.

> Las juezas y los jueces dirigirán los trabajos del tribunal con orden y decoro, y evitarán todo proceder que pueda afectar la dignidad y el respeto debido al tribunal. Intervendrán para impedir cualquier conducta impropia de las partes, las abogadas y los abogados o cualquier otra persona, y tomarán las acciones que procedan de acuerdo con la ley, los Cánones del Código de Ética Profesional y las mejores tradiciones del sistema judicial.

En cuanto al aspecto procesal de los procesos disciplinarios, la Regla 14 de nuestro Reglamento, 2011 T.S.P.R. 174, 183 D.P.R. ___ (2011), provee para la designación de un Comisionado Especial que celebre una vista para recibir la prueba. Asimismo, la Regla 12 de Disciplina Judicial dispone para la creación de una Comisión de Disciplina Judicial para que auxilie al Tribunal en el

ejercicio de su responsabilidad en asuntos de disciplina de Jueces o Juezas. In re Aprobación Reglas, 164 D.P.R. 137, 147 (2005).

Reiteradamente, hemos sostenido que las determinaciones de hecho que un Comisionado haga en un procedimiento disciplinario merecen nuestra deferencia. In re Ruiz Rivera, 168 D.P.R. 246, 278 (2006); In re Saavedra Serrano, 165 D.P.R. 817, 829 (2005). Así pues, hemos expresado que **este Tribunal no alterará las determinaciones de hecho de la Comisión, a no ser que medie pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba.** Íd. Por otra parte, no estamos obligados a aceptar las recomendaciones del Comisionado Especial sobre la querella disciplinaria. In re Muñoz, Morell, 182 D.P.R. 738, 749-750 (2011); In re Maldonado Torres, 152 D.P.R. 858, 869 (2000).

Cabe señalar además que, para imponer sanciones disciplinarias, nuestro ordenamiento ético disciplinario requiere que haya prueba clara, robusta y convincente de que hubo violaciones éticas. In re Muñoz, Morell, supra; In re Caratini Alvarado, 153 D.P.R. 575, 585 (2001).

III.

En el primer cargo, se le imputa a la Jueza Sierra Enríquez disuadir al señor Virella Marín a auto-representarse, y desatender los reclamos de este para que se le asignara representación legal de oficio. Además, se le imputa hacer total abstracción del Reglamento para la Asignación de Abogados (as) de Oficio de Procedimientos de Naturaleza Penal, lo que violó los derechos constitucionales

del querellante y vulneró su debido proceso de ley. Asimismo, se le imputa incumplir su deber ético de ser cuidadosa y rigurosa en el estudio y aplicación del derecho. Por todo lo anterior, la Comisión de Disciplina Judicial encontró que la querellada infringió los Cánones 4 y 8 de Ética Judicial.

La Jueza Sierra Enríquez admitió haber violado el Canon 4 al incumplir con el procedimiento reglamentario de asignación de abogados de oficio. Por consiguiente, no analizaremos su cumplimiento con las disposiciones del Reglamento para la Asignación de Abogados (as) de Oficio de Procedimientos de Naturaleza Penal.

Por otro lado, la querellada no admitió haber violado el Canon 8, que impone el deber de ser rigurosa en el estudio y aplicación del derecho. De un análisis de los hechos de este caso, se desprende que la Jueza Sierra Enríquez desconocía aspectos elementales del procedimiento criminal. En la primera vista en contra del señor Virella Marín, la querellada le cuestionó si por el hecho de comparecer por derecho propio estaba renunciando a abogado y al derecho contra la auto-incriminación. Asimismo, le cuestionó al señor Virella Marín cómo iba a contrainterrogar y a contrainterrogarse. Incluso, la Jueza Sierra Enríquez le preguntó a la Fiscal Cancio "¿cómo podría este señor entonces representarse a sí mismo en un caso criminal… como este?" Luego, se dirigió al señor Virella Marín y expresó: "no veo cómo usted se pueda representar a sí mismo en un caso criminal sin que se autoincrimine".

En el segundo cargo, se le imputa a la querellada menoscabar los derechos del querellante al no darle la oportunidad de explicar o rebatir lo expresado por la licenciada Maldonado Rivera de que ella no era su abogada. Por ello, se le imputa haber violado los Cánones 8 y 9 de Ética Judicial. Estos exigen al juez o jueza que ejerza "diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia", Canon 8, *supra,* y conceder a toda persona "el derecho a ser oída". Canon 9, *supra.*

De la transcripción de la segunda vista celebrada contra el señor Virella Marín, surge que este sostuvo que la licenciada Maldonado Rivera era su representante legal, que ella no estaba presente, pero que ella le había informado que solicitaría que se citara el caso para una fecha posterior. Luego, la licenciada Maldonado Rivera hizo una comparecencia especial ante el Tribunal en la que confirmó que el querellante estuvo por su oficina y que lo orientó como parte de los servicios brindados en la División Legal del Municipio de Manatí. Acto seguido, dijo lo siguiente:

> Se le advirtió que el caso nosotros no lo estábamos aceptando y que tomaríamos… nosotros teníamos otro asunto en la mañana de hoy y que en caso de que lo pudiéramos representar, debido a que teníamos otros 4 asuntos en Arecibo, le orien… le diríamos y le advertimos que también buscara representación porque ya usted le había dado otra oportunidad.

A pesar de la ambigüedad de las expresiones antes citadas, la Jueza Sierra Enríquez procedió inmediatamente a concluir que el señor Virella Marín había mentido. Así pues, le impuso

pena por desacato, sin brindarle la oportunidad de expresar su versión al respecto.

Tal y como lo concluyó la Comisión de Disciplina Judicial, el expediente demuestra que pudo haber surgido un error en la comunicación entre el señor Virella Marín y la licenciada Maldonado Rivera que produjera una confusión de buena fe sobre si esta última asumiría la representación legal del entonces acusado o no. Así pues, ante los hechos de este caso, la Jueza Sierra Enríquez debió brindarle al señor Virella Marín la oportunidad de reaccionar a lo expresado por la abogada, para entonces evaluar ambas posiciones y adjudicar. En cambio, la querellada procedió a concluir que el señor Virella Marín mentía y actuó airadamente, sin mayor reflexión al respecto.

En el tercer cargo, se le imputa a la Jueza Sierra Enríquez mostrar impaciencia y severidad excesiva contra el querellante, en violación a los derechos fundamentales de este. Ello, en contravención del Canon 14 de Ética Judicial.

Al examinar la transcripción de los procedimientos que dieron origen a la querella ante nos, surge que la Jueza Sierra Enríquez actuó de forma atropelladora contra el señor Virella Marín. Desde el inicio de la primera vista celebrada el 3 de noviembre de 2008, este se dirigió respetuosamente a la Jueza Sierra Enríquez para solicitar la citación de varios testigos. En cambio, la querellada lo interrumpió para indagar sobre quién lo estaba representando. Al acusado responder que comparecía por derecho propio, la magistrada le

impidió auto-representarse, bajo la premisa errada de que no podía hacerlo sin auto-incriminarse.

Luego, la Jueza Sierra Enríquez le preguntó al señor Virella Marín de qué vivía, a lo que este respondió que recibía una compensación militar. Con esta mínima información, la jueza querellada concluyó inmediatamente que el entonces acusado tenía dinero suficiente para contratar un abogado. Ello, sin preguntar sobre la cantidad de la compensación, ni la cantidad de dependientes que este mantenía. Es decir, la Jueza Sierra Enríquez no indagó ni llevó a cabo examen alguno sobre la alegación de indigencia del querellante. Al enfrentarse a la inferencia equivocada de la magistrada, el señor Virella Marín intentó aclarar que no tenía dinero suficiente para contratar representación legal. Sin embargo, la jueza querellada procedió a cambiarle la premisa, indicando: "¿no tiene? O sea usted se reitera que no va a contratar abogado".

Ante estas insinuaciones de la jueza querellada sobre su capacidad económica y la falta de representación legal, el señor Virella Marín optó finalmente por expresar que realizaría los trámites para conseguir un abogado. Además, la Jueza Sierra Enríquez advirtió que tenía que cumplir con lo anterior "so pena de desacato".

Días después, el señor Virella Marín presentó una moción por derecho propio solicitando al tribunal que le asignaran un abogado ya que su situación económica no le permitía contratar un abogado de la práctica privada. En esta, detalló que había hecho gestiones para recibir representación legal

por su condición de indigente pero estas habían sido infructuosas. En específico, señaló que acudió a la Oficina de Servicios Legales de Manatí y Arecibo y a las oficinas Pro Bono. Incluso, detalló que recibía una mensualidad de $962.00 y que tenía cinco dependientes. Sin embargo, la jueza querellada denegó de plano esta solicitud, sin realizar evaluación alguna sobre la alegación de indigencia del señor Virella Marín y sin atender su invocación del derecho constitucional a que se le asignara un abogado.

Diez días después de esta denegatoria, el señor Virella Marín presentó diligentemente una segunda moción por derecho propio, en la cual solicitó las razones por las cuales no fue aprobada su solicitud de asignación de un abogado. La Jueza Sierra Enríquez denegó nuevamente su moción.

Como puede apreciarse, mediante estas dos mociones, el señor Virella Marín puso en posición a la Jueza Sierra Enríquez para realizar una determinación informada sobre si este tenía capacidad económica para contratar representación legal. Además, demostró las gestiones afirmativas que había realizado para cumplir con el mandato de la jueza querellada. Sin embargo, la magistrada ignoró las alegaciones de indigencia del señor Virella Marín y su invocación del derecho constitucional de que se le asignara un abogado.

Llegado el día de la segunda vista, el señor Virella Marín alegó estar representado por la licenciada Maldonado Rivera. Sin embargo, esta última negó ser su abogada mediante explicaciones ambiguas. Ante esto, la Jueza Sierra Enríquez no se preocupó por escuchar la versión del acusado sobre el

asunto, a pesar de que lo que este había expresado sobre el motivo de la ausencia de la licenciada Maldonado Rivera en la mañana fue consistente con las explicaciones brindadas por el abogado que la sustituyó y por ella. De esta manera, la querellada adjudicó el asunto sin evaluar la posición de ambas partes.

Peor aun, a pesar de que otros abogados estaban presentes en la Sala por lo que pudieron haber sido asignados para representar en ese momento al señor Virella Marín, la jueza querellada se negó expresamente a hacerlo.

Luego de este proceder atropellador, la Jueza Sierra Enríquez emitió una orden de desacato contra el señor Virella Marín por este supuestamente haber mentido al tribunal. Originalmente, la penalidad consistía en una multa económica. Apenas unos minutos después, la querellada reconsideró *motu proprio* su decisión y aumentó la pena condenando al señor Virella Marín a diez días de cárcel. Además, le advirtió que si no comparecía a la próxima vista representado por un abogado, volvería a ordenar su encarcelamiento por otros diez días.

Asimismo, la Jueza Sierra Enríquez emitió otra orden de desacato sumario contra el querellante, por este haber comparecido sin representación legal. Esto, a pesar de que el señor Virella Marín había demostrado sus múltiples diligencias para acatar la orden del Tribunal. La penalidad consistió en una multa de quinientos dólares ($500.00) o un día de cárcel por cada cincuenta dólares ($50.00) que dejara de pagar. Ello pudo haber conllevado una condena de diez días

adicionales en la cárcel. La jueza querellada impuso este desacato sin asignarle algún abogado en sala para que defendiera al señor Virella Marín en cuanto a esta decisión.

Respecto a su encarcelamiento, el señor Virella Marín alegó en su queja juramentada que sintió temor por su seguridad mientras estuvo preso, pues fue identificado como ex miembro de la Policía por otros confinados. Además, la condena que sufrió tuvo el efecto de que se suspendieran sus beneficios de Seguro Social, como señalamos.

Indubitadamente, la totalidad de las circunstancias que caracterizaron los procedimientos judiciales en contra del señor Virella Marín demuestra que la Jueza Sierra Enríquez violó el Canon 14 de Ética Judicial pues mostró impaciencia y severidad excesiva. Consiguientemente, no mantuvo su conducta dentro de la debida propiedad y circunspección. Con su proceder, la querellada hizo caso omiso al llamado a los jueces y juezas a mantener el temperamento judicial y a no actuar ensoberbecidos del poder. In re Rodríguez Plaza, 182 D.P.R. 328, 346 (2011). Ciertamente, la conducta de la Jueza Sierra Enríquez trascendió los límites de un mero error de derecho revisable mediante un recurso apelativo.

Cabe destacar que, según surge de la transcripción de las vistas, el señor Virella Marín siempre se condujo hacia el tribunal con el mayor respeto. Nunca se expresó de forma alterada o grosera.

**Debemos enfatizar, además, que nuestra conclusión no se basa únicamente en la imposición de ambos desacatos criminales. De ninguna manera deben interpretarse nuestros**

**pronunciamientos en menoscabo de la facultad que tienen los jueces y juezas para vindicar la autoridad del Tribunal mediante este mecanismo. Más bien, nuestra conclusión se fundamenta en el proceder atropellado y la falta de temperamento de la jueza querellada, evidenciados por la totalidad de las circunstancias que caracterizaron el procedimiento criminal en contra del señor Virella Marín desde su inicio hasta el encarcelamiento de este último.**

Aclarado lo anterior, estamos de acuerdo con la determinación de la Comisión de Disciplina Judicial de que la Jueza Sierra Enríquez violó los Cánones 4, 8, 9 y 14 de Ética Judicial. Al examinar el expediente, no encontramos razón alguna por la cual apartarnos de las determinaciones de hecho y conclusiones de derecho de la Comisión. Aunque los hechos de este caso constituyen un acto aislado dentro de la carrera judicial de la Jueza Sierra Enríquez, coincidimos con la Comisión en que **"la falta cometida es de tal magnitud que atenta contra la fibra misma de nuestro sistema de justicia y quebranta la confianza que debe promover el sistema en la imparcialidad de los magistrados"**. Tal y como señala la Comisión, la conducta de la querellada es injustificable, ya que no fue un acto impulsivo en un momento de coraje. En cambio, constituyó un patrón de violación crasa al debido proceso del señor Virella Marín. La querellada pudo haber corregido su error, pues celebró varias vistas y tuvo ante sí dos mociones en las cuales pudo rectificar su proceder. Sin embargo, no lo hizo.

Más aún, las acciones de la Jueza Sierra Enríquez tomaron lugar en un momento en que la Rama Judicial está tomando medidas afirmativas para promover el acceso a la justicia, facilitando la auto-representación en estos tipos de casos. Véase Informe de la Rama Judicial de Puerto Rico 2007-2011, pág. 25. Ello, debido a que un número creciente de personas están tomando la decisión de acudir a los tribunales por derecho propio, motivados por razones que varían desde la falta de recursos económicos para contratar abogados hasta la percepción de que la controversia puede resolverse con éxito mediante la comparecencia por derecho propio. Íd.

## IV.

Por todo lo anterior, es forzoso concluir que la Jueza Sierra Enríquez violó los Cánones 4, 8, 9 y 14 de Ética Judicial, 4 L.P.R.A. Ap. IV-B. Consiguientemente, suspendemos a la Hon. Gloria M. Sierra Enríquez de empleo y sueldo por un término de un mes.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Gloria M. Sierra Enríquez          AD-2011-2

SENTENCIA

San Juan, Puerto Rico, a 12 de junio de 2012.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, se suspende a la Hon. Gloria M. Sierra Enríquez de empleo y sueldo por el término de un mes.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Feliberti Cintrón no intervienen. La Jueza Asociada señora Pabón Charneco no intervino.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo